**C. F. WILLIAMS and Jeanne V. Williams, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 78–1985.

United States Court of Appeals, Tenth Circuit.

Argued May 9, 1980.

Decided July 11, 1980.

Rehearing Denied July 31, 1980.

Donald E. Herrold, Tulsa, Okl. (Paul R. Hodgson, Tulsa, Okl., on briefs), for appellants.

John D. Dudeck, Jr., Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, and Richard W. Perkins, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before McKAY and BREITENSTEIN, Circuit Judges and MARKEY, Chief Judge, United States Court of Customs and Patent Appeals.*

BREITENSTEIN, Circuit Judge.

Taxpayers appeal from a Tax Court decision, PH Memo ¶ 78,306, which upheld the Commissioner's determination of deficiencies totaling about $285,000 for the tax years 1964 through 1969. The issue is whether cash withdrawals from closely held corporations are taxable dividends or bona fide loans. We affirm.

The petitioners-taxpayers are Clint Williams and his wife Jeanne Williams. Three Oklahoma corporations are involved, Oil Tool Sales Co. (Sales), Oil Tool Manufactur-

* Sitting by designation.

ing Co. (Manufacturing), and Williams Machine Co. (Machine). Clint and Jeanne each owned about 48% of the stock in Sales and Manufacturing and 45% of the stock of Machine. They were respectively president, vice president, and member of the board of directors of each company. The other directors were either employees of the companies or daughters of Clint.

Before the period in question, taxpayers advanced money to the three corporations for which no notes or security were given. In 1964 taxpayers began to withdraw funds from the corporations in addition to their salaries. The withdrawals were treated as receivables on the books and balance sheets of the corporations, on state and federal income tax returns, and on state franchise tax returns. Taxpayers' withdrawals were treated as assets on the corporations' general ledgers.

The combined salaries of taxpayers ranged from $32,400 in 1964 to $43,500 in 1969. The earned surplus of Sales was $42,-441 in 1965 and $548,630 on December 31, 1969. At the same times that of Manufacturing was $149,589 and $351,614, and of Machine $250,370 and $352,588. No formal dividends were ever declared or paid by any of the three corporations. Clint testified that the surplus was intended for use in expansion but admitted on cross-examination that there were no definite plans for expansion.

The Commissioner's notice of deficiency determined that for the pertinent period Clint and Jeanne received constructive dividends by reason of the following net withdrawals:

| | |
|---|---:|
| Sales | $ 320,152 |
| Manufacturing | 210,155 |
| Machine | 45,999 |
| Total | $ 576,306 |

None of the companies required that the board of directors authorize loans to officers, employees, or customers. Customers whose accounts were more than a year old were required to furnish interest-bearing notes for the balance due. One of the companies made loans to customers without requiring notes or security. The companies regularly loaned small sums to employees which were repaid.

During the period the taxpayers had substantial personal assets with a combined net worth which, excluding constructive dividends and company stock, increased from $755,615 on December 31, 1963, to $1,375,-876 on December 31, 1969. The taxpayers used the withdrawn funds for various personal purposes, including living expenses, investments, legal fees, and personal loan repayments.

Witness Bottenfield, the accountant for the taxpayers and the corporations, prepared the federal and state income tax returns and the state franchise tax returns. In his opinion the withdrawals were properly treated as loans.

From 1960 to 1969 the taxpayers were regularly investigated by the Internal Revenue Service. In August, 1969, the taxpayers knew that their income tax returns for the taxable years 1964 through 1968 had been assigned to a revenue agent for audit.

During 1964–1967 Bottenfield advised taxpayers that they should make notes to the companies for the various withdrawals. Before May 1, 1967, no note or other written agreement of indebtedness was executed with respect to any of the disputed withdrawals, and no security or collateral was pledged to secure payment. In May, 1967, Clint instructed an employee, Birdie Taylor, to determine the amount "owed" and prepare "notes." Clint executed demand notes, one to each company. The amounts varied from $120,067 to $25,243. The face amount of the notes was less than the balance shown in accounts receivable because of the omission of various withdrawals. They did not contain any payment schedule and were unsecured. No interest was paid on the notes.

On April 16, 1969, Clint sold Canadian property to B & L Land & Livestock, Ltd., Charles Laird, and Harold Beckwith for $20,000 cash and a 7% note for $655,000 (Canadian funds). The B & L note was secured by a second mortgage and seven sales contracts. It called for eleven equal annual payments of $54,885.

On the advice of counsel the taxpayers, on August 29, 1969, each executed notes to each company for the entire amount of withdrawals carried in their names as of July 31, 1969. The new notes included no interest accrued on the withdrawals or previously executed notes. The notes bore 6% interest and had a payment schedule coinciding with that of the B & L note. Clint's notes were secured by 2,292 shares of Sun Oil Company preferred stock and the B & L obligation. The notes executed by Jeanne were unsecured but were signed by Clint as guarantor. The board of directors of each company accepted the notes and cancelled all prior accounts and notes of Clint and Jeanne.

In October, 1969, negotiations began for the acquisition of Sales, Manufacturing, Machine, and two other companies by Smith International, Inc. The withdrawals by Clint and Jeanne were treated as accounts receivable and so represented to the New York Stock Exchange in connection with the listing of the Smith shares. Smith issued 90,000 shares of its stock in exchange for all of the stock of the companies controlled by the taxpayers.

In February, 1970, Clint assigned the B & L note to Sales, Manufacturing, and Machine and the accounts of Clint and Jeanne with those companies were credited with full payment except for a later satisfied obligation to Sales. In August, 1971, the B & L note was returned to taxpayers in exchange for shares of Smith.

■ The question of whether payments to stockholders of a closely held company are loans or constructive dividends is normally a fact issue but, when there is no dispute in the evidence, "it is a question of law whether the facts add up to debt or dividend." *Dolese v. United States*, 10 Cir., 605 F.2d 1146, 1153, application for certiorari pending. "A constructive dividend is paid when a corporation confers an economic benefit on a stockholder without expectation of repayment." *Wortham Machinery Company v. United States*, 10 Cir., 521 F.2d 160, 164.

Taxpayers emphasize their intent to repay and argue that the Tax Court did not give proper consideration to that intent. Clint testified that he intended to repay. Jeanne did not testify because of illness. Witness Taylor, Secretary-treasurer of the three companies, testified that Clint told her that "when he collected some money on the Canadian properties, then he would pay the company." Witness Bunny, a former bookkeeper for the companies, testified that Clint said he would pay when he "settled his Canadian properties;" that Jeanne told her that she could get the money [to repay] "whenever Clint paid his off;" and that Jeanne mentioned going to a lawyer to "see if he couldn't do something to Clint to make him to pay them." Bottenfield, the accountant, said with reference to the withdrawals, that he told taxpayers in 1963 or 1964 that "they should not do this and they should pay the money back to the companies. * * * And they said they would."

■ At the most, the mentioned testimony shows a subjective intent of the taxpayers to repay. A declared intent to repay is insufficient if it fails to jibe with the undisputed facts indicating the intrinsic economic nature of the transaction. *Fin Hay Realty Co. v. United States*, 3 Cir., 398 F.2d 694, 697, and *Alterman Foods, Inc. v. United States*, 5 Cir., 505 F.2d 873, 877. The self-serving declarations must be balanced against the surrounding circumstances.

■ Taxpayers argue that the Tax Court gave insufficient weight to the evidence of repayment. Taxpayers' notes were liquidated in February, 1970, by the assignment to the companies of the B & L note. In August, 1971, the B & L note was returned to taxpayers in exchange for shares of Smith, the company which had purchased the stock of Sales, Manufacturing, and Machine. The repayment was not made until after taxpayers were aware that their returns were to be audited and that the stock they were to receive from Smith at least equalled their August 1969 notes to the three companies. As said by the Tax Court, the taxpayers "never lost personal control of the withdrawn funds." The purported

repayment of the withdrawals by the assignment of the B & L note was no more than a formalism of no great significance. Repayment is a factor to be taken into consideration along with all pertinent circumstances attending the transactions.

With reference to the question of debt or dividend, we said in *Dolese*, 605 F.2d at 1153:

"The courts have looked to a number of test factors in deciding the question. Such factors have included the control of the corporation, its dividend history, the size of the advances, whether the corporation imposed a ceiling on the amounts that might be borrowed, whether there were definite maturity dates, attempts to force repayment, intention or attempts to repay, and the shareholder's ability to liquidate the loan."

Our consideration of all the mentioned factors presents the problem of the scope of appellate review. In *Commissioner v. Duberstein*, 363 U.S. 278, 286, 80 S.Ct. 1190, 1197, 4 L.Ed.2d 1218, a gift tax case, the Court recognized that intent is the controlling factor and said that Id. at 289, 80 S.Ct. at 1199, "primary weight in this area must be given to the conclusions of the trier of fact." Applying this rule, the conclusion of the trial court that the taxpayers did not intend to repay is a reasonable inference supported by substantial evidence and not clearly erroneous. See *Tollefsen v. C.I.R.*, 2 Cir., 431 F.2d 511, 513.

■ If, because the transactions are undisputed, we have a question of law, see *Dolese*, 605 F.2d at 1153, and *Alterman*, 505 F.2d at 877, we must consider whether the expressed intent to repay and circumstances of repayment outweigh the facts pertaining to the withdrawals. The withdrawals over a long period of years, the control of the taxpayers over the companies, the accumulation of an impressive earned surplus, the nonpayment when the taxpayers had the ability to pay, the failure to execute notes until the tax problems became acute, and the circumstances surrounding the repayment are all objective factors which outweigh subjective intent. Use of the withdrawals for personal interests and repayment after the start of an audit are incompatible with an intent to repay when the withdrawals were made. Whether the record presents a fact question, a law question, or a mixed question of law and fact, we agree with the Tax Court that the withdrawals were constructive dividends and not debts.

The Tax Court refused to receive a supplemental stipulation of facts and proffered evidence relating to a settlement made by taxpayers and IRS with reference to their 1970 tax. They say that the settlement was an admission by C.I.R. that the withdrawals were loans rather than dividends. Taxpayers say they are treated unfairly because their admissions against interest are received as pertinent and material and the admissions of the C.I.R. against interest are rejected.

■ Taxpayers' 1970 tax was not at issue in the case, and matters relative to that tax were neither pertinent nor material. The C.I.R.'s acceptance of the settlement there made did not estop him from asserting that during the years in question, the transactions were dividends rather than debts. Equitable estoppel does not apply. *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180 and 183, 77 S.Ct. 707 and 709, 1 L.Ed.2d 746, and *Union Equity Cooperative Exchange v. C.I.R.*, 10 Cir., 481 F.2d 812, 817 cert. denied 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321. In *Wiles v. United States*, 10 Cir., 312 F.2d 574, 577, we said that the noted rejection of estoppel extends "with equal force, to the use of prior tax returns or audits as admissions against interest." The principle applies to subsequent returns and to a settlement agreement. The Tax Court properly excluded the evidence.

■ Taxpayers argue that in evaluating the various factors consideration should be given to the Oklahoma presumption that directors fulfill their fiduciary duties. See *McKee v. Interstate Oil & Gas Co.*, 77 Okl. 260, 188 P. 109. Federal law determines federal tax consequences. *Dolese*, 605 F.2d at 1152; and *Chism's Estate v. C.I.R.*, 9 Cir., 322 F.2d 956, 959.

Affirmed.