ARNOLD L. LEWIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lewis v. Commissioner
Docket No. 17875-84.
United States Tax Court
T.C. Memo 1985-563; 1985 Tax Ct. Memo LEXIS 67; 50 T.C.M. (CCH) 1414; T.C.M. (RIA) 85563; November 18, 1985. *67 John A. Warwick, for the petitioner. J. A. Lapota, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice dated March 9, 1984, respondent determined a deficiency in petitioner's 1980 Federal income tax liability in the amount of $167,547. After substantial concessions by the parties, the sole issue remaining for decision is whether cash payments of $108,980.17 from a closely held corporation to petitioner and his former wife were bona fide loans or taxable dividends. FINDINGS OF FACT Petitioner, Arnold L. Lewis, was a resident of Rock Springs, Wyoming, at the time his petition was filed herein. Petitioner and his former wife, Vernena Lewis ("Vernena"), timely filed a 1980 joint Federal income tax return. Petitioner and Vernena were the sole shareholders of Lewis Construction & Paving, Inc., a Wyoming Corporation ("the Corporation"), during the years 1978 until March of 1982. Each apparently owned 50 percent of the stock during those years. Petitioner was president of the Corporation and ran the operating aspects of the business. Vernena was secretary and treasurer, and was responsible for the bookkeeping, *68 financial, tax, and legal aspects of the business. She was assisted by an accountant and an attorney. Petitioner and Vernena were each paid a salary of $50,000 per year by the Corporation for their services. During the years 1978 through 1982, in addition to the salaries paid to petitioner and Vernena, the Corporation made cash payments to them in the following total amounts: 1978
$75,000.00
1979
133,393.00
1980
[1] 108,980.17
1981
45,351.64
1982
3,243.39
TOTAL
$365,968.20
The cash payments apparently were made to petitioner and Vernena jointly. The $75,000 paid in 1978 was used by petitioner and Vernena to purchase on their own behalf a 12-unit apartment complex in Casper, Wyoming. The $133,393 paid in 1979 was used by them to purchase on their own behalf all of the stock of a towing and wrecking company also located in Casper, Wyoming. Approximately $87,000 of the $108,980.17 paid in 1980 was used by petitioner and Vernena to purchase a personal residence. An interest in a real estate limited partnership was purchased by petitioner and Vernena *69 with $10,000 of the 1980 payments and an additional $10,000 thereof was transferred by petitioner and Vernena to the towing and wrecking company for additional operating capital. The $1,980.17 remainder of the 1980 payments to petitioner and Vernena was used to purchase a life insurance policy on petitioner's life, to make a loan to Vernena's son by a prior marriage, and to pay an accountant for auditing services on behalf of petitioner. Payments to petitioner and Vernena totaling $45,351.64 in 1981 and $3,343.39 in 1982, were made on frequent occasions and in small amounts. Divorce proceedings had been instituted in March of 1981 between petitioner and Vernena and pursuant to the recommendation of the divorce attorneys, personal bills of petitioner and Vernena were run through the Corporation. Those bills included groceries, credit card payments, and automotive repairs. The divorce became final March 10, 1982. Pursuant to an agreement with respect to the division of property, Vernena received complete ownership of the stock of the Corporation and was to assume all liabilities of the Corporation. Also, Vernena apparently assumed responsibility for repayment to the Corporation *70 of those payments that had been made to petitioner by the Corporation and that were required to repaid. The Corporation used the accrual method of accounting for financial reporting purposes. The payments to petitioner and Vernena were reflected on the balance sheets of the Corporation and were designated thereon as "Notes Receivable - Stockholders and employee." The Corporation's balance sheets as of August 31, 1979, and August 31, 1980, reflected an item for accrued interest due on outstanding loans, apparently representing a seven-percent interest accrual on the payments to petitioner and Vernena. Petitioner and Vernena repaid to the Corporation $100,688.33 of the $365,968.20 they received from the Corporation during the years 1978 through 1982. Of the amounts repaid, all but $3,200 was repaid in 1981, shortly after petitioner and Vernena sold the property or businesses they had purchased in earlier years with the money received from the Corporation. For example, in 1981, petitioner and Vernena sold the 12-unit apartment complex (realizing net proceeds of $50,000) and the towing and wrecking service (realizing net proceeds of $25,000). The net proceeds realized by petitioner *71 and Vernena from those transactions were utilized to make a substantial portion of the repayments. The record does not indicate whether Vernena made further repayments subsequent to the time she acquired control of the Corporation in the divorce proceeding. No interest on the payments they received was paid by petitioner and Vernena to the Corporation. The $110,688.33 that was repaid to the Corporation was simply credited to the Corporation's loan receivable account. No portion thereof was credited to the accrued interest account. For Federal income tax purposes, the Corporation used the cash method of accounting, and no interest income was reported on its Federal corporate income tax returns for its taxable years ending August 31, 1979, and August 31, 1980, with respect to the payments made to petitioner and Vernena. No promissory notes were submitted into evidence with respect to the payments made by the Corporation to petitioner and Vernena in 1980. The only promissory notes that are in evidence are dated in January and February of 1981, as follows: Promissor
Amount
Date of Note
Lynn Hall [2]
$1,063.25
January 23, 1981
Arnold Lewis
1,626.75
January 23, 1981
Lynn Hall
1,063.25
February 5, 1981
Arnold Lewis
1,626.75
February 5, 1981
Vernena Lewis
1,032.42
February 5, 1981
Lynn Hall
1,063.25
February 20, 1985
Arnold Lewis
1,626.75
February 20, 1981
Vernena Lewis
1,626.75
February 20, 1981
*72 Each of the above notes reflected a due date 12 months after the date of the note and an annual interest rate of 12 percent. Petitioner claims that promissory notes were prepared and executed with respect to the 1980 payments but petitioner explains that Vernena currently has possession of all of the corporate records including copies of the notes. Vernena was served with a subpoena duces tecum to produce records of the Corporation, but she ignored the subpoena and at the time of trial the parties did not know her location. The Corporation's financial statements indicate that the Corporation had retained earnings of $1,006,035 as of August 31, 1979, and $986,293 as of August 31, 1980. The Corporation's amended Federal income tax return reflects taxable income of $518,229 for its taxable year ending August 31, 1980. [3]
The parties stipulated that the Corporation had current earnings and profits for its taxable year ending August 31, 1980, in excess of payments to petitioner and Vernena.Despite the Corporation's *73 earnings and profits, the Corporation never declared or paid dividends. In 1981, the financial condition of the Corporation deteriorated rapidly, due to an economic recession that occurred in Wyoming. The personal financial statements of petitioner and Vernena reflected a net worth of approximately $225,000 as of April 1979, and approximately $600,000 as of June 1980, exclusive of their interest in the Corporation. The major assets they owned were purchased with the cash payments received from the Corporation. In the June 1980 financial statement, petitioner and Vernena valued their stock ownership interest in the Corporation and in the towing and wrecking company at a combined value of $1,381,979. OPINION The issue of whether amounts paid to shareholders are dividends or loans is a factual issue and depends upon the good faith intent of the shareholders to repay the amounts received and the intent of the corporation to require repayment. Williams v. Commissioner,627 F.2d 1032, 1034 (10th Cir. 1980), affg. a Memorandum Opinion of this Court; Pierce v. Commissioner,61 T.C. 424, 430 (1974). In the case of a closely held corporation, special *74 scrutiny is required becuse of the unfettered control exercised by a limited number of shareholders. Roschuni v. Commissioner,29 T.C. 1193, 1201-1202 (1958), affd. per curiam 271 F.2d 267 (5th Cir. 1959). Mere declarations by shareholders that they intended a transaction to constitute a loan is insufficient if the transaction fails to meet more reliable indicia of debt which indicate the "intrinsic economic nature of the transaction." Williams v. Commissioner,supra at 1034; Fin Hay Realty Co. v. United States,398 F.2d 694, 697 (3d Cir. 1968). In making the necessary factual determination, courts have looked to a number of objective factors including the following: (1) the extent to which the shareholders control the corporation; (2) the earnings and dividend history of the corporation; (3) the magnitude of the payments; (4) whether a ceiling existed to limit the amount of the corporate payments; (5) whether or not security was given for the payments; (6) whether there was a set maturity date; (7) whether the corporation ever undertook to force repayment; (8) whether the shareholders were financially *75 able to repay the payments; and (9) whether there was any indication the shareholders attempted to repay the amounts received. Dolese v. United States,605 F.2d 1146, 1153 (10th Cir. 1979); Alterman Foods, Inc. v. United States,505 F.2d 873, 877 n. 7 (5th Cir. 1974). Also relevant are the treatment of the payments on the books of the corporation making the payments, the substantiality of any repayments made by the shareholders, and the existence of corporate earnings and profits at the time of the payments. Pierce v. Commissioner,supra,61 T.C. at 430-431. Petitioner asserts that aside from the $50,000 salary he and Vernena each received, he understood and intended the payments received from the Corporation to be loans and that he and Vernena intended to repay the loans. Petitioner argues specifically that (1) he did in fact repay a significant amount of the payments; (2) he would have repaid a greater amount but for the fact that Vernena assumed responsibility to repay the outstanding balance of the payments in the divorce proceeding; (3) he and Vernena had the ability to make repayments at the time the amounts *76 were received; and (4) the payments were treated as loans on the financial statements of the Corporation. Petitioner also notes that the financial requirements of the Corporation's bonding company set a practical limitation on the amount of dividend distributions and loan payments the Corporation could make and that it was important for the Corporation to be able to meet the bonding requirements in order to qualify to bid on large construction projects. Respondent asserts that the payments in issue were dividend distributions, and points to a number of objective factors in support thereof. Respondent argues that (1) in spite of high earnings and profits and control of the Corporation by petitioner and Vernena, the Corporation never declared a formal dividend; (2) the payments were not evidenced by promissory notes (with the exception of some payments in 1981); (3) no security was given for the alleged loans; (4) there was no definite date by which repayment was due; (5) no interest ever was paid on the alleged loans; and (6) only partial repayments occurred and then only with respect to amounts received in years prior to 1980. Respondent also notes the large magnitude of the payments *77 and the personal use by petitioner and Vernena of the money received. Having carefully considered all of the facts and circumstances of this case, we conclude that the payments received by petitioner and Vernena in 1980 from the Corporation were dividend distributions. We are persuaded by the large amount of the payments, the absence of the formal indicia of debt (namely, written notes, maturity dates, stated interest rates, specified repayment dates of principal and interest), the presence of large corporate earnings and profits in 1980, the failure to declare dividends, the personal use of the proceeds, and the control of the Corporation by petitioner and Vernena. We are convinced that the payments received in 1980 by petitioner and Vernena were not intended to be true loans but were intended to be distributions of earnings and profits of the Corporation to the sole shareholders thereof (namely, petitioner and Vernena). Although we recognize that transactions of closely held corporations are frequently characterized by informality, the informality relating to the payments in question goes beyond what would be expected with respect to purported loans of this size. Petitioner *78 has the burden of proof herein, Rule 142(a), Tax Court Rules of Practice and Procedure, and he did not produce promissory notes with respect to any of the 1980 payments. No security agreements were entered into with respect to the alleged loans, and the Corporation did not receive security interests in any of the property that petitioner and Vernena purchased with the money received. We are not persuaded by petitioner's argument that the financial requirements of the bonding company precluded the payment of dividends. Petitioner failed to introduce any direct evidence regarding the specific financial requirements of the bonding company. The only evidence on this point is general testimony from the Corporation's accountant to the effect that he was concerned that the Corporation continue to meet the financial requirements of the bonding company. As the Tenth Circuit stated in Dolese v. United States,supra at 1154-- If a sole owner of a corporation could have his living expenses paid by the corporation as a loan, using his control of the entity to postpone repayment indefinitely, a loophole would be created. The double taxation penalty of the corporate *79 form might be avoided entirely by liquidation or sale after death. Why then would a controlled corporation ever pay dividends, except as required to avoid IRC § 531 penalties? We think that this type of bypass around the double tax structure is inconsistent with Congress' intent in the enactment of the income tax laws. Wherever the line might be drawn on permissible personal loans from a corporation to its shareholders, the instant case exceeds it. * * * We conclude that the payments in question totaling $108,980.17 in 1980 constitute dividends. Because of concessions, Decision will be entered under Rule 155.
Footnotes
1. Only the $108,980.17 paid to petitioner and Vernena by the Corporation in 1980 is in dispute.↩
2. Lynn Hall was a nonshareholder employee of the corporation.↩
3. All of the payments in issue herein were made between January 18, 1980 and August 31, 1980.↩