GEORGE O'CONNOR and KARLA O'CONNOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
O'Connor v. Commissioner
Docket No. 5734-83.
United States Tax Court
T.C. Memo 1985-616; 1985 Tax Ct. Memo LEXIS 20; 51 T.C.M. (CCH) 138; T.C.M. (RIA) 85616; December 17, 1985. Andrew C. Barnard and George S. Barnard, for the petitioners. Vera E. Gilford, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency in petitioners' income tax for 1975 in the amount of $26,458 and an addition to tax under section 6653(a) [1] in the amount of $1,323. The issues for decision are (1) whether George O'Connor received a constructive dividend in 1975 in the *21 amount of $47,547 from Brackin-Ward Ford, Inc., his wholly-owned corporation, and (2) if the resolution of the first issue is in the affirmative, whether petitioners are liable for an addition to tax under section 6653(a) for an underpayment of income tax due to negligence or intentional disregard of the rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. George and Karla O'Connor, husband and wife, resided in Crestview, Florida, at the time they filed the petition in this case. Karla O'Connor is a party solely by virtue of having filed a joint return with her husband for 1975. Hereinafter George O'Connor will be referred to as petitioner. Brackin-Ward Ford, Inc., a corporation organized under the laws of the State of Florida in 1967 (Brackin-Ward Ford), operated an automobile dealership in Crestivew, Florida. At all relevant times, petitioner owned all the outstanding stock [2] of Brackin-Ward Ford and was its president. *22 O'Connor Motor Company is petitioner's sole proprietorship.It purchased used cars which it resold (normally at a profit) to Brackin-Ward Ford. Prior to August 27, 1975, Brackin-Ward Ford was indebted to the First Bank of Crestview (the Bank) in the amount of $52,453. That loan was secured by a mortgage on real property owned by the corporation. On August 27, 1975, Brackin-Ward Ford borrowed an additional $47,547 from the Bank. As additional collateral, petitioner pledged his stock in Brackin-Ward Ford. The $47,547 was deposited (on the date of the borrowing) into O'Connor Motor Company's bank account [3]; the deposit slip bore the notation "loan proceeds." The $47,547 Bank borrowing was not reflected in Brackin-Ward Ford's books of account. In late 1976, petitioner informed his accountant, Benjamin A. Totten, *23 III, that he had to repay the $47,547 to the Bank. [4] Mr. Totten recommended that petitioner sell part of his Brackin-Ward Ford stock to the corporation for $47,547, which would relieve petitioner from using his personal funds to repay the Bank loan. Petitioner accepted Mr. Totten's recommendation [5] after being assured by him that "it was legal" and would benefit him tax-wise. Thereafter, in November, 1976, the corporation's in-house bookkeeper recorded the stock sale by debiting "Treasury Stock" and crediting "mortgages payable." Further, in late 1976, Mr. Totten prepared minutes for a factitious July 31, 1975 "special meeting of Directors of Brackin-Ward Ford, Inc." The minutes stated: 1) The corporation has applied for a $100,000.00 loan using as collateral the land and building on Highway 90. It appears that the loan is going to be granted. The corporation originally issued 200 shares of corporate stock but in the past bought back 66 2/3 shares making 133 1/3 shares outstanding of which all belong to Mr. George O'Connor. As of this date the value per outstanding share is $1,298.75. It is Mr. O'Connor's desire to sell 36 2/3 of his present 133 1/3 shares back to the corporation *24 for $47,547.00. The funds for this sell [sic] will come from the loan proceeds which will be disbursed in August 1975. This would then leave Mr. O'Connor holding 96 2/3 shares. 2) Mr. O'Connor may desire in the future to sell to the corporation a portion of his 96 2/3 shares for what the fair market value per share may be at the time of sell [sic]. Mr. Fasse [6] then placed each of the above in the form of a motion. Each was seconded by Linda Williamson, voted upon and carried. Petitioners filed a joint income *25 tax return for 1976 (prepared by Mr. Totten) in which they reported a capital gain from the sale of 36 2/3 shares of Brackin-Ward Ford stock. In 1978, petitioners' 1975 income tax return was selected for a TCMP [7] audit. During the course of the audit, both petitioner and Mr. Totten informed the Revenue Agent that petitioner had sold 36 2/3 shares of Brackin-Ward Ford stock to the corporation for $47,547. When the Revenue Agent informed Mr. Totten that the proceeds from such a stock sale would be treated as a dividend under section 302(d), Mr. Totten realized that he had given erroneous advice to petitioner and he suggested that petitioner repay Brackin-Ward Ford the $47,547. Petitioner made such a repayment on September 18, 1978. Respondent determined that petitioner received in 1975 a constructive dividend in the amount of $47,547 from Brackin-Ward Ford. In addition, respondent determined that an addition to tax under section 6653(a) should be imposed as a result of the underpayment of tax. Petitioners contend alternatively that *26 (1) the $47,547 was a loan from the Bank to petitioner, (2) if the $47,547 represented a loan from the Bank to Brackin-Ward Ford, then the transfer of the $47,547 represented a loan to petitioner from Brackin-Ward Ford, and (3) if the sale of stock by petitioner to Brackin-Ward Ford is to be given effect (which would result in the sale proceeds being treated as a dividend under section 302(d)), then such transaction occurred in 1976 which year is not before the Court. ULTIMATE FINDING OF FACT Petitioner received in 1975 a constructive dividend from Brackin-Ward Ford in the amount of $47,547. OPINION For tax purposes, a dividend is any distribution of property made by a corporation to its shareholders out of accumulated (after February 28, 1913) or current earnings and profits. Section 316. [8] No formal declaration need be made that the corporate distribution is to be a dividend nor must the distribution to shareholders be made directly by the corporation. Sparks Nugget, Inc. v. Commissioner,458 F.2d 631 (9th Cir. 1972), cert. denied 410 U.S. 928 (1973), affg. a Memorandum Opinion of this Court. *27 To resolve the principal issue for decision, we must determine whether the Bank lent $47,547 to petitioner or to Brackin-Ward Ford. If we determine that the Bank loan was to Brackin-Ward Ford, then we must determine whether petitioner received (indirectly through O'Connor Motor Company) the $47,547 as a loan from Brackin-Ward Ford or as a constructive dividend. [9] If we determine either that the $47,547 was a loan from the Bank to petitioner or was a loan from Brackin-Ward Ford to petitioner, then receipt of the $47,547 by petitioner in 1975 would be non-taxable. On the other hand, if we determine that the $47,547 received by petitioner was a loan from the Bank to Brackin-Ward Ford and that the distribution from Brackin-Ward Ford to petitioner was not a loan, then receipt of the $47,547 by petitioner in 1975 would be taxable. *28 Petitioner bears the burden of proving that he received the $47,547 either as a loan from the Bank or as a loan from Brackin-Ward Ford. Welch v. Helvering,290 U.S. 111, 133; Rule 142(a), Tax Court Rules of Practice and Procedure. He has failed to carry this burden. Petitoner failed to produce any Bank loan documents or records of the Bank transaction. In lieu of documentation, petitioner submitted an affidavit from a vice president of the Bank, which purported to describe the terms of the loan. [10] That affidavit states: Our records indicate that on August 27, 1975, Brackin-ward Ford Inc. borrowed $100,000.00 based on a blanket real estate mortgage to our bank. $80,000.00 of this was lent by our bank and $20,000.00 by Citizens and Peoples National Bank of Pensacola. The note was endorsed by George O'Connor personally. This endorsement meant that should the corporation default on any monthly payment, it would be deducted from his individual account. Should the corporation not pay the mortgage and note, Mr. O'Connor would be expected to personally pay for it. Petitioner testified that he felt personally responsible for repayment of the Bank loan. *29 He was unclear as to the exact nature of his liability, that is whether primary or secondary; but he summarized his understanding of the situation by saying "[t]he only thing I know is any time I endorse a loan, regardless who it was for, my corporation or an individual, I felt that if he didn't fulfill the obligation, I would have to." (Emphasis added.) [11] Petitioner's testimony is insufficient to prove that the Bank loan was to him, rather than to Brackin-Ward Ford. The affidavit from the Bank's vice president, as well as petitioner's own testimony, supports respondent's argument. [12] According to the affidavit, Brackin-Ward Ford (and not petitioner) was the primary obligor with respect to the entire $100,000 Bank loan. Based on the record, we sustain respondent's determination that the Bank lent Brackin-Ward Ford, and not petitioner, the $47,547. [13] Thus, we find that the funds deposited into O'Connor Motor Company's account on August 27, 1975, represented a transfer, albeit indirect, from Brackin-Ward Ford to petitioner. *30 Having found that the Bank loan was to Brackin-Ward Ford, we next must determine whether petitioner received the $47,547 as a loan from Brackin-Ward Ford or as a constructive dividend. It is well settled that the true character of an alleged loan transaction depends on the intent of the parties. Alterman Foods, Inc. v United States,505 F.2d 873 (5th Cir. 1974), and cases cited therein. In the absence of other evidence reflective of the economic realities of the transaction, the unsupported declarations of the parties as to their intent is insufficient to establish that a loan exists. Where the parties consist of a corporation and its sole shareholder, "courts look with great care to the surrounding facts and view with some suspicion declarations of intent which have the effect of maximizing the tax benefit of that stockholder." 505 F.2d at 877. A number of factors are relevant in ascertaining the intent of the parties. In Roschuni v. Commissioner,29 T.C. 1193 (1958), affd. per curiam 271 F.2d 267 (5th Cir. 1959), cert. denied 362 U.S. 988 (1960), we found that the absence of notes evidencing a debt, *31 the lack of any repayment schedule, and the fact that no security was given for the withdrawals, nor any interest charged thereon, indicated that the withdrawals were dividends. The Court in Atlanta Biltmore Hotel Corp. v. Commissioner,349 F.2d 677 (5th Cir. 1965), affg. a Memorandum Opinion of this Court, also concluded that the absence of any note or loan documents, and the lack of security or interest provisions militated against a finding of a loan. The evidence in this case precludes a finding that the $47,547 received by petitioner was a loan-- according to any test that might be considered. No written documentation of any loan from Brackin-Ward Ford to petitioner was produced, although there was purportedly adopted a corporate resolution dated January 31, 1974, requiring corporate loans to be evidenced by an interest-bearing note and limited to $10,000 in amount. Brackin-Ward Ford's corporate tax return for the taxable year ended 1975 did not advert to this transaction in any way. Although the corporate books of account for 1975 were not produced, we presume that those records if produced also would not reflect any such loan to petitioner. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), *32 affd. 162 F.2d 513 (10th Cir. 1947). Petitioner's various characterizations of the $47,547, first as loan proceeds to him from the Bank and then as redemption proceeds from Brackin-Ward Ford, make us leery of attaching much weight to his declarations that the $47,547 constituted proceeds of a loan to him from Brackin-Ward Ford. The only fact in support of petitioner's claim is that he transferred $47,547 to Brackin-Ward Ford in 1980, which he claims was repayment of the loan. This fact, however, does not establish that the transaction, at its inception, was intended to be a loan. The Court of Appeals for the Tenth Circuit, in affirming our decision in Williams v. Commissioner,627 F.2d 1032 (10th Cir. 1980), held that repayment made only after taxpayers realized that their returns would be audited was "no more than a formalism of no great significance." Similarly, we found in Estate of Chism v. Commissioner,T.C. Memo. 1962-6, affd. 322 F.2d 956 (9th Cir. 1963), that where a revenue agent advised taxpayers that their withdrawals would be treated as dividends, the accountant's subsequent efforts to "clean-up" the corporate *33 books and subsequent payment to the corporation did not establish that the withdrawals were actually loans. Throughout, petitioner contends that the withdrawal of $47,547 was for the purpose of purchasing automobiles as agent for Brackin-Ward Ford.This claim is inconsistent with petitioner's insistence that the funds represented a loan from Brackin-Ward Ford, since it is unlikely that petitioner would agree to expend funds on behalf of Brackin-Ward Ford and then repay Brackin-Ward Ford an amount equal to those funds. In addition, petitioner testified that he generally purchased cars on behalf of his sole proprietorship and then resold the cars, at a profit, to Brackin-Ward Ford. Such self-dealing is not indicative of a principal-agent relationship. Further, petitioner testified that he co-mingled funds of Brackin-Ward Ford with those of his sole proprietorship. Thus, we are unable to conclude that petitioner expended the $47,547 as agent for Brackin-Ward Ford. We now turn to consideration of respondent's assessment of additions to the tax under section 6653(a). Petitioner had the burden of proof to show that his underpayment was not due to negligence of intentional disregard *34 of rules or regulations. Enoch v. Commissioner,57 T.C. 781, 802 (1972). Petitioner did not directly address this issue, but it appears that he attempts to avoid the addition by showing that the underpayment is attributable to the negligence of his accountant, Mr. Totten. Petitioner appears to believe that his reliance on Mr. Totten absolves him personally from blame for any negligence. [14]
As previously discussed, the tax consequences of petitioner's transactions depended largely upon his intent. We agree with the Court in United States v. Pomponio563 F.2d 659 (4th Cir. 1977), cert. denied 435 U.S. 942 (1978), that even if a taxpayer in some situations may justifiably rely on his accountant's interpretation of the tax laws, these situations cannot include cases where the question is one of the taxpayer's own intent. We find that the underpayment of tax did not result from petitioner's justified reliance on Mr. Totten, but rather from his belief that he could, at will, alter the character of his transactions by manufacturing *35 evidence to support whatever legal theory he found advantageous at the moment. Such an approach is patently unreasonable. Thus, we hold that petitioners are liable for the additions to tax under section 6653(a). Accordingly, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
2. Of the 200 shares of common stock of Brackin-Ward Ford authorized, there were 133 and 1/3 shares outstanding in 1975.↩
3. Petitioner contends that the $47,547 was needed to provide O'Connor Motor Company with funds to purchase used automobiles which were then resold to Brackin-Ward Ford. Prior to this borrowing, O'Connor Motor Company had obtained funds from Brackin-Ward Ford. Petitioner acknowledged that he co-mingled the funds of Brackin-Ward Ford and O'Connor Motor Company.↩
4. Mr. Totten was under the impression that in 1975 (1) the in-house bookkeeper of Brackin-Ward Ford had recorded the $47,547 Bank borrowing by debiting cash and crediting mortgage payable and (2) petitioner had borrowed the $47,547 from Brackin-Ward Ford and there had been a subsequent bookkeeping entry which debited shareholder loans and credited cash, both in the amount of $47,547. ↩
5. No transfer of stock took place, presumably because physical possession of the stock was with the Bank. ↩
6. In 1975 and 1976, the Directors of Brackin-Ward Ford were petitioner, Walter Fasse (the corporation's in-house bookkeeper), and Linda Williamson (petitioner's daughter).↩
7. A TCMP (Taxpayer Compliance Measurement Program) audit is more in depth than an audit normally conducted by the Internal Revenue Service.↩
8. It is undisputed that Brackin-Ward Ford had accumulated earnings and profits at all relevant times in excess of $47,547.↩
9. The purported sale of stock in 1976 merely confuses matters. While we do not countenance fictitious transactions, we shall ignore both the fictitious stock sale and the minutes of the fictitious directors' meeting in deciding the characterization of the $47,547 received by petitioner. Hence, we need not address petitioner's third alternative argument.↩
10. At trial, the Court ordered petitioner to supplement the record by submitting documentation of the Bank loan. The record was held open for 30 days after conclusion of the trial for this purpose. This affidavit was submitted, according to petitioner, "in lieu of a note which cannot be found." ↩
11. The record does not indicate whether Brackin-Ward Ford ever was in default on the obligation. However, petitioner admits that the corporation made timely interest payments. ↩
12. We recognize that the affidavit is hearsay evidence, not within any exception to the hearsay rule. Respondent, however, did not object to its admission into evidence. The legal conclusions contained in the affidavit, if correct, would contradict petitioner's argument that he, rather than Brackin-Ward Ford, borrowed the money. Of course, we must independently assess the legal effect of petitioner's endorsement on the note. ↩
13. The fact that Brackin-Ward Ford's books did not reflect the indebtedness to the Bank is not determinative. Petitioner's approach to record-keeping is flexible, to say the least.We attach no weight to the fact that the obligation was not recorded on the books of the corporation.↩
14. Petitioner also believes that his tax troubles were caused by Mr. Totten. Such simply is not the case.↩