LELAND L. AND ROSANNE M. SPRAGUE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sprague v. Commissioner
Docket No. 16043-86.
United States Tax Court
T.C. Memo 1989-117; 1989 Tax Ct. Memo LEXIS 117; 56 T.C.M. (CCH) 1511; T.C.M. (RIA) 89117; March 23, 1989
F. T. Muegenburg, *118 Jr., for the petitioner. Elizabeth Rawlins, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: This case was assigned to Special Trial Judge Larry L. Nameroff pursuant to section 7456(d) (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) of the Code [1] and Rule 180 et seq. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE NAMEROFF, Special Trial Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax as follows: Year
Deficiency
Sec. 6653(a)
1979
$ 15,691.64
$ 784.58
1980
7,562.00
499.00
1981
13,793.00
* 690.00
*119 The issues for decision are: 1) whether Leland L. Sprague received constructive dividends between 1979 and 1981 totalling $ 76,000.00 from Leland L. Sprague, M.D., Inc., his wholly-owned corporation; and 2) whether petitioners are liable for additions to tax due to negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits are incorporated herein by this reference. Petitioners are husband and wife who resided in Ventura, California at the time their petition was filed in this case. Hereinafter, Dr. Sprague will be referred to as petitioner. Petitioner has been an anesthesiologist since 1960. He has resided in Ventura, California since 1979 and has maintained a practice in Ventura since 1964. Petitioner also invests in real estate. Petitioner's business, Leland L. Sprague, M.D., Inc., (hereinafter referred to as the corporation) is a professional corporation organized under the laws of the State of California in 1971. Prior to 1971, petitioner operated his business as a sole proprietorship. Petitioner has been the corporation's sole director and shareholder *120 since its formation. Moreover, petitioner and his wife have been the corporation's only officers. Specifically, petitioner has served and continues to serve as the corporate president and treasurer. Rosanne M. Sprague has served and continues to serve as the corporate vice president and secretary. At all times relevant herein, the corporation has filed its Federal income tax returns using a fiscal year ending September 30. Between May 25, 1979 and June 4, 1981, petitioner made nine withdrawals from the corporation. [2] Eight of these withdrawals were repaid. The relevant transactions occurred as follows: Date Of Withdrawal
Amount
Date Of Repayment
May 25, 1979
$  5,000.00 December 17, 1981
June 7, 1979
5,000.00 December 17, 1981
August 21, 1979
10,000.00 August 15, 1983
December 28, 1979
10,000.00 December 28, 1983
February 10, 1980
5,000.00 April 9, 1984
March 11, 1980
5,000.00 May 17, 1984
May 26, 1980
5,000.00 May 17, 1984
April 30, 1981
11,000.00 April 21, 1985
June 4, 1981
20,000.00      -
*121 Petitioner regularly received correspondence from his legal counsel, F. T. Muegenburg, Jr., Esq., or Mr. Muegenburg's assistant. These letters notified petitioner that the corporate bylaws required him to convene a meeting of either the corporate shareholders or the corporate directors by a prescribed date. Upon receipt of such notices, it was petitioner's practice to hold the appropriate corporate meeting with petitioner and his wife in attendance. It was also petitioner's practice to transcribe the minutes of these meetings in longhand. He would then send the handwritten minutes to Mr. Muegenburg's office, where they were typed. Thereafter, the minutes were returned to petitioner and were placed in the corporation's permanent records. One of these handwritten minutes, from a director's meeting on April 20, 1979, contains the following: "resolved -- that the officers of the corp. be authorized to loan [petitioner] from time to time money at the prevailing rate of interest in a total amount not to exceed 1 years [sic] salary at any given time." Thereafter, the corporation issued a check to petitioner, dated May 25, 1979, in the amount of $ 5,000.00. The check, which was *122 signed by Dr. Sprague, contained the notation "1 yr. loan." The withdrawal was used by petitioner to invest in a movie. On June 7, 1979, the corporation issued a second check to petitioner in the amount of $ 5,000.00. Again, the check contained a notation "Loan - 1 yr." This withdrawal was used by petitioner to pay an obligation on a second trust deed on a rental property. On August 21, 1979, the corporation issued a check to petitioner in the amount of $ 10,000.00. The notation on the check read "Transfer." The $ 10,000.00 was transferred to the Spragues' personal checking account and was eventually used to pay a note on a trust deed on commercial property. On November 15, 1979, petitioner received a letter from his attorney's assistant transmitting the typed minutes of previous meetings. The letter also stated: "In your April 20 minutes, where the corporation is authorized to loan money to you individually, please be aware that if such a loan is made to you, it must be substantiated by a demand note and a resolution of the director. Also, pursuant to a recent tax court ruling, interest-free loans may be made from the corporation to you as a shareholder." On December 28, 1979, petitioner *123 withdrew another $ 10,000.00 from the corporation. The money was used in part to pay an obligation on a second trust deed and in part to finance the reconstruction of some rental property. Withdrawals of $ 5,000.00 each were made from the corporation by petitioner on February 10, 1980, March 11, 1980 and May 26, 1980, to finance the reconstruction of rental property. The checks issued by the corporation to petitioner all contained notations stating either "Demand Loan" or "Loan, demand." In a letter dated May 13, 1980, Mr. Muegenburg advised petitioner that the interest-free loans made by the corporation constituted a "Tax Court approved employee-shareholder benefit." [3] In a letter dated June 12, 1980, Mr. Muegenburg further advised petitioner to refine the existing promissory notes and corporate resolutions to reflect a more formalistic style. Revised promissory notes were enclosed. We presume that the executed, demand interest-free notes stipulated by the parties are these revised notes, even though dated as of each transaction, and that the "original" notes were then destroyed. *124 The last two withdrawals from the corporation by petitioner were in the amounts of $ 11,000.00 and $ 20,000.00, and were made on April 30, 1981 and June 4, 1981, respectively. Promissory notes and corporate resolutions were issued to support the loans. In addition, the corporate check for the April 30, 1981 withdrawal contained the notation "Loan." The $ 11,000.00 was used to purchase a mobile home for petitioner's mother, while the $ 20,000.00 was placed in a money market investment account. Until December 17, 1981, petitioner failed to repay any of the notes outstanding. The corporation received an audit notice dated November 5, 1981 from I.R.S. Revenue Agent Michelle Rosenthal. The notice informed the corporation that its tax returns would be audited for the fiscal years ending September 30, 1980 and September 30, 1981. On December 17, 1981, petitioner repaid $ 10,000.00 and the notes for the loans dated May 25, 1979 and June 7, 1979 were marked "paid." Other repayments were made as indicated above. In the summer of 1984, petitioner was advised by his attorney that it would be necessary to pay interest on the loans then outstanding. At that time, the remaining interest-free *125 demand notes were cancelled and new, interest-bearing notes were issued. On or about February 22, 1981, petitioner applied for a $ 120,000.00 residential loan from the Bank of A. Levi of Ventura, California. At the time petitioner applied for the loan, seven of the nine shareholder advances at issue were outstanding. As part of the loan application, petitioner submitted a financial statement to the bank. On the financial statement, petitioner failed to list the seven advances as liabilities. However, petitioner also failed to list other assets on the financial statement including automobiles, jewelry, art work and Krugerrands. By April 1985, petitioner had repaid all of the outstanding debts at issue except for the withdrawal on June 4, 1981. All nine withdrawals were appropriately reflected in Schedules L of the corporation's various income tax returns. At all times relevant, the corporation had earnings and profits in excess of the amounts at issue. All the notes at issue were unsecured and no repayment schedule was ever drawn up by the corporation during the years at issue. However, the record indicates that petitioner always possessed the ability to repay the loans. *126 The following schedules reflect the corporation's gross income, the compensation paid to petitioner, and retained earnings for the corporation's fiscal years ending September 30, 1979, September 30, 1980, September 30, 1981, and September 30, 1982. Year
Gross Income
Petitioner's Salary
Retained Earnings
1979
$ 210,322.30
$  96,000.00
$  50,368.15
1980
$ 234,312.12
$  96,000.00
$  50,671.12
1981
$ 270,188.48
$  96,000.00
$ 101,400.26
1982
$ 288,394.13
$ 116,000.00
$ 163,111.69
Since the corporation's inception, it has never issued a dividend. Petitioner stated that the lack of dividends was due to his desire to keep funds available in case a malpractice judgement was entered against the corporation in excess of its $ 500,000 liability coverage. Petitioner also wished to keep money in the corporation because he was contemplating acquiring additional office space for his billing operations. Petitioner was in fact considering the purchase of several different properties for that purpose, although no such purchase was actually made. Petitioner stated that he viewed the interest-free portions of the loans as an employee benefit. OPINION
*127 Section 61(a)(7) provides that gross income includes dividends. Section 301 provides that a distribution of property by a corporation to a shareholder with respect to its stock is includable in gross income to the extent the distribution is a dividend as defined by section 316. Section 316 defines a dividend as any distribution of property made by a corporation to its shareholders out of its earnings and profits accumulated after February 28, 1913. Section 317 defines "property" as including money, securities and any other property. The determination of whether a withdrawal from a wholly-owned corporation constitutes a loan or a dividend depends upon petitioner's intent at the time the withdrawal is made. If petitioner's intent was to repay, the withdrawal will be treated as a loan. However, if petitioner's intent was to retain the advanced funds, the withdrawal will be treated as a constructive dividend. Berthold v. Commissioner,404 F.2d 119, 122 (6th Cir. 1968), affg. a *128 Memorandum Opinion of this Court; Haag v. Commissioner,88 T.C. 604 (1987). Such intent is a question of fact to be determined upon a thorough evaluation of all the circumstances in each case. Haag v. Commissioner, supra.
Establishing the taxpayer's intent by direct evidence is extremely difficult. Dean v. Commissioner,57 T.C. 32, 43 (1971). Consequently, the Court must utilize several objective criteria to determine whether a withdrawal constitutes a loan or a dividend. These objective criteria include: the extent of shareholder control of the corporation; the retained earnings and dividend history of the corporation; the size of the withdrawals; the presence of conventional indicia of debt, such as promissory notes, collateral, and provision for interest; treatment of advances in corporate records; the history of repayment; and the taxpayer's use of the funds. Busch v. Commissioner,728 F.2d 945, 948 (7th Cir. 1984). Other objective criteria include "whether the corporation imposed a ceiling on the amounts *129 that might be borrowed, whether [there] were definite maturity dates, attempts to force repayment, intention or attempts to repay, and the shareholder's ability to liquidate the loan." Williams v. Commissioner,627 F.2d 1032, 1035 (10th Cir. 1980). None of these factors, standing alone, is determinative of the issue before us. Alterman Foods, Inc. v. United States,505 F.2d 873, 876-877 n.6 (5th Cir. 1974). However, these factors are useful in determining whether there is a true intention to repay. Some of these factors favor respondent, while others favor petitioners. Based upon an analysis of the foregoing factors as they apply to this case, we conclude petitioner has not demonstrated that he intended to repay the withdrawals when they were made. First, we note that there has been no showing that petitioner needed the withdrawn funds. The use to which the funds were put indicates that petitioner regarded the corporation as another "pocket" or personal source of funds, rather than an arm's-length lender. The withdrawn funds were used for personal investments or, on one occasion, a mobile home for petitioner's mother. The initial withdrawal, *130 as well as all subsequent withdrawals, were made under a corporate resolution permitting the loans without any showing of need or other restriction, except that the total borrowings not exceed petitioner's annual salary. Of course, petitioner's salary was a matter over which he had total control as sole shareholder of the corporation. Therefore, the resolution had very little significance. We think petitioner regarded these loans as a right attributable to the form of business that he utilized. Petitioner admits he failed to initiate repayment of any of his debts to Leland L. Sprague, M.D., Inc., during 1979, 1980 and from January to November 1981, even though the early withdrawals were initially supposed to be repaid within one year. Petitioner's first repayment occurred on December 17, 1981, when he purportedly paid off the May 25, 1979 note and the June 7, 1979 note. Significantly, these repayments occurred shortly after the IRS had notified petitioner of its intention to audit LeLand L. Sprague, M.D., Inc., in a letter dated November 5, 1981. We believe that there is a strong cause and effect relationship between the receipt of the audit letter by petitioner and his commencement *131 of repayments. Subsequent to the inception of the audit, further repayments were made. Petitioner claimed that he was motivated to make the first repayment because he "had a little extra money" and "it seemed prudent to go ahead and repay it at that time." We are not persuaded that petitioner was particularly "flush" at that time. Indeed, we believe these repayments would not have been made but for the receipt of the audit notice. In O'Connor v. Commissioner,T.C. Memo. 1985-616, we accorded little probative value to impromptu repayments made by taxpayers under notice of audit. "Use of the withdrawals for personal interests and repayment after the start of an audit are incompatible with an intent to repay when the withdrawals were made." Williams v. Commissioner,627 F.2d 1032, 1035 (10th Cir. 1980), affg. a Memorandum Opinion of this Court. Petitioner's intention not to repay the corporate withdrawals is further demonstrated by his failure to list the then-outstanding withdrawals at issue as debts on a bank loan application wherein petitioner listed *132 fourteen other real estate loans as debts. Petitioner's failure to list these withdrawals on the bank loan application indicates he did not view them as bona fide loans. Additional factors indicating the withdrawals were dividends include: (1) all nine promissory notes specifically provided that the borrowed amounts were interest free and payable on demand; (2) none of the loans were either secured by collateral or supported by written repayment schedules; (3) the corporation apparently had little concern regarding repayment; (4) none of the loans had a business purpose directly related to petitioner's practice, but were instead used for petitioner's real estate investments or for personal purposes; and (5) significantly, the corporation never issued a dividend notwithstanding substantial retained earnings. The only credible evidence presented by petitioner which would indicate that these withdrawals were loans are the promissory notes, loan authorizations and corporate tax returns which characterize these withdrawals as loans. However, while this evidence is to be considered, it is not controlling. *133 "Book entries and records may not be used to conceal a situation which is not in reality what it is made to appear." Fenn v. Commissioner,T.C. Memo. 1980-229, 40 T.C.M. 559 at 561. Based upon the foregoing considerations, we must reject petitioner's contention that the withdrawals at issue were bona fide loans. We conclude that such amounts should be treated as dividends distributed to petitioner from his wholly-owned corporation. Petitioner has failed to carry his burden of demonstrating that the amounts at issue were bona fide loans. Welch v. Helvering,290 U.S. 111 (1933); Rule 142 (a). We now consider respondent's determination of additions to tax under sections 6653(a)(1) and 6653(a)(2). Petitioners have the burden of proof to show that the underpayments were not due to negligence or the intentional disregard of rules or regulations. Enoch v. Commissioner,57 T.C. 781, 802 (1972). After a review of the facts and circumstances presented, we hold that petitioners are not liable for the additions to tax set forth in the notice *134 of deficiency. Decision will be entered for respondent, except for the additions to tax.
Footnotes
1. Hereinafter, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. For 1981, this addition to tax was determined under section 6653(a)(1); respondent also determined an addition to tax for 1981 under the provisions of section 6653(a)(2) in an amount equal to 50% of the interest due on the total underpayment.↩
2. Our use of the terms "loan", "repayment", "note", "promissory note" and other similar terms for for convenience only and do not impart any legal conclusion or significance.↩
3. The letter cited Crown v. Commissioner67 T.C. 1060 (1977), affd. 585 F.2d 234 (7th Cir. 1978), and Suttle v. CommissionerT.C. Memo. 1978-393, affd. 625 F.2d 1127 (4th Cir. 1980). Crown held that no gift was occasioned by a tax-free loan, while Suttle refused to reconsider our previous opinion in Dean v. Commissioner,35 T.C. 1083↩ (1961), to the effect that the interest-free portion of a loan does not generate gross income (i.e., imputed interest income). None of these cases held that a loan to a shareholder or employee of a closely-held corporation was not a dividend as a result of, or in spite of, the interest-free feature.