544 F.2d 419
 76-2 USTC P 9759
 Jay F. WALKER and Beatrice Walker, Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
Jay F. WALKER and Beatrice Walker, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
Newell E. FAIT and Helen B. Fait, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
 Nos. 74-1280, 74-1314, 74-1187.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 22, 1976.
 
 James E. Murphy (argued), of Gibson, Dunn & Crutcher, Los Angeles, Cal., for Newell Fait and Helen Fait.
 Frank DeMarco (argued), of DeMarco, Beral, Greenberg, Thrall & Slusher, Robert L. Weiner (argued), of Weiner & Rotman, Los Angeles, Cal., for Jay and Beatrice Walker.
 Ann B. Durney, Atty. (argued), of Tax Div., U.S. Dept. of Justice, Washington, D.C., for C. I. R.
 Before CARTER, TRASK and GOODWIN, Circuit Judges.
 TRASK, Circuit Judge:
 
 
 1
 Multiple appeals have arisen here from the determinations by the United States Tax Court of the tax liability of a buyer and a seller of corporate stock. The sale took place almost contemporaneously with a distribution of funds as dividends on the stock. Deficiencies were determined in the income taxes due from both buyer and seller. The Tax Court's decision was filed on October 26, 1972. Walker v. Commissioner, 41 Tax.Ct. Mem. Dec. (P-H) 1158 (1972). Notices of appeal were filed by the two taxpayers and by the Commissioner of Internal Revenue. Jurisdiction is conferred on this court by section 7482 of the Internal Revenue Code of 1954.
 
 
 2
 In 1963, Arden Plymouth, Inc. was incorporated to engage in the business of operating a Plymouth automobile dealership. Appellant Fait acquired all the stock and immediately thereafter sold 70 percent at his cost, including 20 percent to Walker, a business associate. He then made a gift of 30 percent to his children. As a condition of each transfer, Fait required each transferee to give to him an option to repurchase the stock at book value as determined in a Stock Purchase Option and Shareholders Agreement. The price of repurchase was to be book value at the close of the last monthly accounting period preceding the exercise of the option to purchase. Fait also required that each purchaser execute a "Declaration of Trust, Assignment and Voting Trust Agreement" under which Fait was the voting trustee. The directors of Arden, including Fait and Walker, adopted a resolution that Arden elect to be taxed as a small business corporation under Subchapter S., and the appropriate steps were taken to implement the resolution.
 
 
 3
 On October 24, 1964, a special meeting of the board of Arden was held and a resolution was adopted authorizing the distribution of the net earnings of the corporation from January 1, 1964, through September 30, 1964, in the sum of $164,465. Because the corporation had elected to be taxed under Subchapter S., the earnings distributed to the stockholders were not reduced by federal corporate income taxes.
 
 
 4
 Immediately after this meeting Fait presented Walker with a letter exercising his option to repurchase Walker's stock in Arden. Accompanying the letter was a cashier's check for $11,156 representing the current book value of the Arden stock computed in accordance with the option agreement.
 
 
 5
 In November 1964, Arden sent a check to Walker in the sum of $32,893 representing his share of the distribution of earnings voted at the meeting on October 24.
 
 
 6
 Walker initially reported on his 1964 income tax return the sum of $32,893 received from Arden as ordinary income. He also reported long-term capital gain of $7,723 representing the amount received from Fait for his Arden stock less his basis in it. Later, he filed an amended return for 1964 asserting that the $32,893 received as a distribution from Arden was more properly a portion of the sales price of his stock sold to Fait and was therefore taxable as long-term capital gain rather than as ordinary income. Fait did not include any part of the $32,893 on his 1964 return. The Commissioner asserted a deficiency against Fait on the ground that the $32,893 distributed to Walker constituted a constructive dividend to Fait. He also asserted that the money was a dividend to Walker. The Tax Court held that the distribution was a part of the sales price of Walker's shares and was taxable as a dividend to Fait.
 
 
 7
 Fait appeals from the Tax Court's decision against him; the Commissioner filed a protective appeal against Walker, and Walker filed a cross-appeal. The government is thus in a position akin to that of a stakeholder; it takes the position that either Walker or Fait received the dividend and that it certainly is taxable to one of them as ordinary income.
 
 
 8
 None of the parties questions the contention that the corporate distribution of $164,465 to the stockholders was in fact a dividend. Any distribution of property by a corporation to its shareholders out of earnings and profits is a dividend as defined by section 316(a) of the Internal Revenue Code of 1954[1] and is includable in gross income under section 61(a)(7).[2]
 
 
 9
 A determination must be made as to which party received the dividend under the applicable tax principles. The Tax Court approaches the problem along conventional lines, pointing out that where the seller of the stock was the beneficial owner of it at the time the dividend was declared and thus received the dividend, the proceeds were taxable to him as ordinary income. Sam E. Wilson, Jr., 27 T.C. 976 (1957), aff'd per curiam, 255 F.2d 702 (5th Cir. 1958); Merrill C. Gilmore, 25 T.C. 1321 (1956); and, T. J. Coffey, Jr., 14 T.C. 1410 (1950). Contra, in other cases when at the time the dividend was declared, the buyer was the beneficial owner. Frithiof T. Christensen, 33 T.C. 500 (1959); Estate of Arthur L. Hobson, 17 T.C. 854 (1951).
 
 
 10
 The Tax Court distinguishes all of those cases, however, upon the ground that they involved a "freely negotiated sale and purchase of stock between parties free to negotiate the method and terms of the sale." Here, the court argues the declaration of the dividend by Arden on October 24, 1964, was "a meaningless act insofar as it affects the price Fait would be required to pay for Walker's stock or the amount Walker would receive for that stock." This, because of the complete control Fait retained over the corporation by his trusteeship and purchase option. It therefore holds that the $32,893 paid to Walker by Arden "was a part of the sale price of Walker's Arden Plymouth stock and constituted a dividend to Fait."
 
 
 11
 Whatever the control that was held by Fait, it was exercised in such a way that the dividend was declared on October 24, but to all stockholders of record as of September 30. On this earlier date Walker was the owner of the stock and was entitled to receive the dividend. It was on October 24, but after the corporate action had taken place, that Fait exercised his option and purchased Walker's stock. The Commissioner points out, and logically so, that upon the Tax Court's theory of control by Fait, he would be the beneficial owner of not only Walker's stock but of all Arden stock from November 1963 forward because all of it was subject to identical purchase options. The fact that Fait may have planned all of the steps earlier would not have prevented him from changing his time had he chosen to do so or from changing his mind altogether. Because Fait was in control of the stock of Walker he could have done things differently. The point is that the tax consequences follow the manner in which he did in fact carry out his plans.
 
 
 12
 Appellant Walker relies upon the basic teaching of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935), that tax consequences must turn upon the economic substance of the total transaction. He then finds relevance in Casner v. Commissioner, 450 F.2d 379 (5th Cir. 1971), and in Waterman Steamship Corp. v. Commissioner, 430 F.2d 1185 (5th Cir. 1970), cert. denied, 401 U.S. 939, 91 S.Ct. 936, 28 L.Ed.2d 219 (1971). The Tax Court in its opinion fails to find guidance in either case and so do we. Both cases could understandably rely upon Gregory v. Helvering,supra, since in both the large problem was to unravel the total transaction. Waterman even contained an overriding problem of whether a distribution was in fact a dividend. Here, there is no real question that the form of the transaction was a disguise for what it actually was. There is no dispute over the character of the corporate distribution as a dividend and no reason to depart from the rule attributing a dividend to beneficial ownership. The repurchase agreement does not persuade us otherwise. We hold, therefore, that Walker was the beneficial owner as of the date of the declaration of the dividend, whether that be September 30 or October 24, and that the amount received by him is ordinary income. Necessarily we determine that it was not a dividend to Fait. The question of mitigation raised for the first time in the reply brief of Walker is not properly before us, and we do not decide it.
 
 
 13
 The decision of the Tax Court is reversed accordingly.
 
 
 
 [1]
 "SEC. 316. DIVIDEND DEFINED
 "(a) General Rule. For purposes of this subtitle, the term 'dividend' means any distribution of property made by a corporation to its shareholders
 "(1) out of its earnings and profits accumulated after February 28, 1913, or
 "(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made."
 Section 316(a), Internal Revenue Code of 1954.
 
 
 [2]
 "SEC. 61. GROSS INCOME DEFINED
 "(a) General Definition. Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
 "(7) Dividends;"
 Section 61(a), Internal Revenue Code of 1954.