ARNO RAGGHIANTI AND MARILYN RAGGHIANTI, PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ROBERT N. WHITACRE AND MARIE WHITACRE, PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1202–76, 2474–76.     Filed December 5, 1978.

*Clark G. Moscrip,* for the petitioners in docket No. 1202–76.
*Melvin L. Hawley,* for the petitioners in docket No. 2474–76.
*Jerome Borison,* for the respondent.

FAY, *Judge:* Respondent determined the following deficiencies in petitioners' Federal income taxes for 1972:

| Docket No. | Petitioner | Deficiency |
|---|---|---|
| 1202–76 | Arno and Marilyn Ragghianti ...... | $8,197 |
| 2474–76 | Robert N. and Marie Whitacre .... | 7,190 |

These cases were consolidated for purposes of trial, briefing, and opinion.

We have been asked to decide which of the petitioners, Arno Ragghianti or Robert Whitacre, must report, pursuant to section 1373,[1] an additional $16,718 of income from Mac's Tea Room, a subchapter S corporation. Resolution of this question will depend upon which of the petitioners is to be treated as the owner of 7,500 shares of capital stock of Mac's Tea Room on October 31, 1972, of which Robert Whitacre was the record holder.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time of filing their respective petitions herein, Arno and Marilyn Ragghianti and Robert N. and Marie Whitacre resided in Los Altos, Calif.

Mac's Tea Room (Mac's) is a California corporation whose principal business is the operation of a bar and restaurant. At all times relevant herein, Mac's was an electing small business

---

[1] All section references are to the Internal Revenue Code of 1954, as amended.

corporation under subchapter S of the Internal Revenue Code with a fiscal year ending October 31.

For many years prior to November 21, 1972, petitioner Arno Ragghianti (Ragghianti) and petitioner Robert Whitacre (Whitacre) each owned 7,500 shares of the total 15,000 outstanding shares of Mac's. Although Ragghianti was a 50-percent owner, since its inception Mac's was managed almost totally by Whitacre. In this connection, Whitacre's responsibilities included decision making with regard to menu, pricing, purchasing, hiring and firing, and development of a fairly comprehensive system of management.

Prior to November 10, 1971, certain disputes arose between Whitacre and Ragghianti over the conduct of Mac's business. As a result of these disagreements, Whitacre, on November 10, 1971, filed a complaint in the Superior Court of the State of California, seeking the involuntary winding up and dissolution of the corporation.[2]

Upon the filing of Whitacre's complaint, Ragghianti, under the laws of California,[3] was given the option to purchase the shares of Mac's owned by Whitacre. On December 1, 1971, Ragghianti in his answer to Whitacre's complaint, elected to exercise such option. Because of Ragghianti's election, the Superior Court, on December 22, 1971, entered an order staying the involuntary dissolution and requiring Ragghianti to post a $75,000 bond to ensure Whitacre payment of the value of his shares in Mac's. In addition, the order provided that upon the posting of the bond, Whitacre was to be removed as manager of the business and that Ragghianti could thereafter appoint his own manager.

Subsequently, on December 28, 1971, pursuant to the Superior Court's order, Ragghianti posted the required $75,000 surety bond and removed Whitacre as manager of Mac's. Although he remained nominally a director and officer of Mac's, during the period from January 1, 1972, through November 20, 1972, Whitacre performed no services for and received no compensation from Mac's; nor had he been consulted in any way regarding the daily operations of the restaurant. Further, during the period from December 28, 1971, through November 21, 1972, no

---

[2]The complaint for involuntary winding up and dissolution of a corporation is allowed and governed by Cal. Corp. Code sec. 4650, et seq., as in effect for the years in issue.

[3]Cal. Corp. Code sec. 4650, et seq., as in effect for the years in issue.

meetings of shareholders or board of directors were held or called.

On June 15, 1972, the California Superior Court issued a memorandum decision in the case initiated by Whitacre. In its decision, the court fixed the date of the posting of the bond, December 28, 1971, as the date as of which the shares of stock owned by Whitacre would be valued for purposes of determining the price to be paid by Ragghianti for such stock.[4] The court further ruled that Whitacre was not entitled to share in any of the profits of the business after that date.

Later, on November 15, 1972, the Superior Court entered a judgment[5] requiring Ragghianti to pay Whitacre $115,000, plus interest on such amount from December 28, 1971, for Whitacre's 50-percent interest in Mac's. Approximately 1 week later, Whitacre transferred all of his shares in Mac's to Ragghianti for the stated price.

For its fiscal year ending October 31, 1972, Mac's reported taxable income of $33,436. Of this amount, Ragghianti included one-half or $16,718 in computing his taxable income for 1972. Whitacre did not include any portion of Mac's taxable income for its fiscal year ending October 31, 1972, in his income tax return for 1972.

In a statutory notice of deficiency mailed to Ragghianti, respondent determined that Ragghianti owned all of the capital stock of Mac's on October 31, 1972, and as a consequence was obligated to report all of its income. In addition, respondent in a statutory notice increased Whitacre's 1972 income by $16,718 or one-half the income of Mac's attributable to the shares held by Whitacre.

## OPINION

The issue for decision is who, as between petitioners Ragghianti and Whitacre, must report an additional $16,718 of income from Mac's Tea Room pursuant to section 1373.

Generally section 1373 provides that each person who is a shareholder in a subchapter S corporation on the last day of its

---

[4]In addition, the court awarded Whitacre interest from Dec. 28, 1971, on the purchase price of the shares to be purchased by Ragghianti from Whitacre.

[5]Because the petitioners could not agree on a price, a trial on the valuation of the stock was held in August of 1972.

taxable year must report as income his pro rata share of the corporation's taxable income for that year.[6]

Petitioner Ragghianti contends that as the record owner of 50 percent of Mac's capital stock on the last day of its year ending October 31, 1972, Whitacre must report one-half of the corporation's undistributed taxable income for that date.

While petitioner Whitacre admits that he was the record owner of 50 percent of Mac's stock on October 31, 1972, he nevertheless maintains that Ragghianti must report the undistributed taxable income of the corporation attributable to those shares. He argues that Ragghianti was the beneficial owner of such shares on the last day of the corporation's taxable year, and was thus the sole shareholder of Mac's for purposes of section 1373.[7]

By now it is well settled that record ownership of stock, standing alone, is not determinative in answering the question as to who is required to include in gross income any dividends attributable to such stock. Rather, beneficial ownership is the controlling factor. *Walker v. Commissioner*, 544 F.2d 419 (9th Cir. 1976); *Hoffman v. Commissioner*, 47 T.C. 218, 233 (1966). This being so, we must determine which petitioner, Ragghianti or Whitacre, was the beneficial owner of the shares of Mac's which Whitacre held as record owner.

In *Pacific Coast Music Jobbers, Inc. v. Commissioner*, 55 T.C. 866, 874 (1971), affd. 457 F.2d 1165 (5th Cir. 1972), we stated:

A court must consider not only when the bare legal title passed but also when the benefits and burdens of the property, or the incidents of ownership, were acquired or disposed of in a closed transaction. * * * In deciding the question, the court looks to that party to the transaction who has the greatest number of the attributes of ownership. * * * If it is found from all the facts and

---

[6]Sec. 1373 provides in part as follows:

(a) GENERAL RULE.—The undistributed taxable income of an electing small business corporation for any taxable year shall be included in the gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.

(b) AMOUNT INCLUDED IN GROSS INCOME.—Each person who is a shareholder of an electing small business corporation on the last day of a taxable year of such corporation shall include in his gross income, for his taxable year in which or with which the taxable year of the corporation ends, the amount he would have received as a dividend, if on such last day there had been distributed pro rata to its shareholders by such corporation an amount equal to the corporation's undistributed taxable income for the corporation's taxable year. For purposes of this chapter, the amount so included shall be treated as an amount distributed as a dividend on the last day of the taxable year of the corporation.

[7]Respondent is essentially a stakeholder seeking consistent tax treatment of the parties. However, in his brief, respondent lends his support to the position of Whitacre.

surrounding circumstances that the parties intended an agreement to result in the sale of property, and the agreement transfers substantially all the accouterments of ownership, the transaction will be treated as a sale even though the parties intended the legal title should not pass until later. * * * Since courts cannot successfully conjecture as to the subjective intent of the parties, the objective evidence of intent provided by the parties' overt acts must be relied upon.

On the basis of the record as a whole, we hold that Ragghianti, on the last day of the corporation's year ending October 31, 1972, was the beneficial owner of the shares held by Whitacre on that date.

Prior to December 28, 1971, Whitacre owned 50 percent of the capital stock of Mac's and was solely responsible for its daily operation. He was in charge of pricing, purchasing, hiring and firing, and development of a comprehensive system of management of the business. For these services, Whitacre received a salary in addition to his share of the earnings of the corporation. In addition, as a shareholder and director on the board, he attended and voted at meetings of shareholders and board of directors.

On December 28, 1971, Ragghianti posted a bond thereby exercising the option granted him under California law to purchase Whitacre's shares in Mac's. On that date, Whitacre was removed as manager of Mac's. He no longer had any responsibilities with regard to the corporation either on a day-to-day basis or from an ownership point of view; he received no compensation, nor did he partake in any meetings of shareholders or board of directors. Moreover, as a result of the California Superior Court ruling of June 15, 1972, Whitacre did not share in the profit or loss of the corporation from December 28, 1971, through the end of the corporation's fiscal year; instead, he received interest on the fair market value of his stock as of December 28, 1971. Finally, since Whitacre was required to sell his shares of stock to Ragghianti pending an appraisal as to the value of the stock on December 28, 1971, Whitacre, in effect, was merely holding record title to his shares in escrow or as a custodian for Ragghianti.

Accordingly, we conclude that Ragghianti was the sole

shareholder of Mac's on October 31, 1972, and therefore, must report, pursuant to section 1373, all of its income.

> *Decision will be entered in docket No. 1202–76 for the respondent.*

> *Decision will be entered in docket No. 2474–76 for the petitioners.*

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect at the time of decedent's death, unless otherwise noted.