EDMUND J. CORDES AND JUNE CORDES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cordes v. Commissioner
Docket No. 11750-92
United States Tax Court
T.C. Memo 1994-377; 1994 Tax Ct. Memo LEXIS 386; 68 T.C.M. (CCH) 355; August 11, 1994, Filed *386 Decision will be entered under Rule 155. For petitioners: Michael C. Mayhall. For respondent: Gary L. Bloom. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year 1988 in the amount of $ 360,336 and additions to tax under section 6653(a)(1) in the amount of $ 18,017 and under section 6661(a) in the amount of $ 90,084. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, [1] the issues for decision are: 1. Whether petitioner Edmund J. Cordes' withdrawals of corporate funds in the amount of $ 290,800 from Cordes Finance Corp. during 1988 constitute constructive dividends to him; 2. Whether Cordes Finance Corp.'s payment of petitioner's personal expenses in the amount of $ 141,534 constitutes constructive dividends to him; 3. Whether taxable Social Security benefits should be increased in the amount of $ 2,896 for the taxable year 1988; [2]
4. Whether petitioners are liable for the addition to tax under *387 section 6653(a)(1) for negligence or disregard of rules or regulations; and 5. Whether petitioners are liable for the addition to tax under section 6661 for substantial understatement of income tax. *388 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner Edmund J. Cordes (petitioner) and his wife June Cordes (petitioners) were residents of Lawton, Oklahoma, at the time of the filing of the petition in this case. Petitioners timely filed their 1988 Federal income tax return (Form 1040) with the Internal Revenue Service Center in Austin, Texas. During the taxable year 1988, petitioner owned, directly or indirectly, all of the stock in the following five corporations: (1) Cordes Finance Corp., (2) Cordes Building Corp., (3) Edmund Cordes, Inc., (4) John Cordes, Inc., and (5) Eddie Cordes, Inc. [3] No dividends have ever been formally declared and paid by any of the five corporations. Petitioner had control over all of these corporations in 1988 and retained such control until at least 1992. He can serve as president of Cordes Finance Corp. as long as he lives. *389 The corporations were engaged primarily in the sale and financing of automobiles. During 1988 petitioner deposited substantial amounts of income, which properly belonged to the other related corporations controlled by him, into a bank account of Cordes Finance Corp. (Account No. 312). [4] During 1988 petitioner diverted the following amounts of income into Account No. 312 from the following entities: Related entity
Amount Eddie Cordes, Inc.
$   172,828
Cordes Finance Corp. [1]
571,035
Cordes Finance Corp. [1]
81,269
Cordes Dodge
117,471
John Cordes
22,189
Cordes Building Corp.
200,000
Total
$ 1,164,792
At the conclusion of the Internal Revenue *390 Service's examination of all of the related corporate returns for the 1988 taxable year, petitioner in 1991 and 1992 caused Cordes Finance Corp. to reimburse the various entities from which money had been diverted. [5] The various entities agreed to the inclusion of the reimbursements in their taxable incomes for 1988. Respondent has now conceded that these amounts do not constitute constructive dividends to petitioner. See supra notes 1 and 5. *391 Petitioner considered Account No. 312 to be a "holding account" or an account in the nature of a "shareholder loan account". Petitioner claims that he routinely put sums in and took sums out of this account over a period of time. No documentation was offered to support petitioner's testimony regarding his infusions of money into Account No. 312 or Cordes Finance Corp. There are no written agreements or notes evidencing any loans by petitioner or his wife to Cordes Finance Corp. or to the other corporations controlled by him. Petitioner claims there were loans evidenced by "receipts" or "canceled checks", but no receipts or canceled checks were offered in evidence. At the beginning of 1988, Cordes Finance Corp. had accumulated earnings and profits of $ 1,625,887. During 1988, petitioner withdrew monthly sums from Cordes Finance Corp., made payable to the following individuals and charged against Account No. 312: Payee and relationship to petitioner
Amount
John Cordes--son
$ 101,300
June Cordes--wife
129,300
Jean Ann Cordes--daughter
12,000
Ellen Cordes--daughter-in-law
4,000
Jean Patton--sister
18,000
Ray Lee--personal friend
18,000
John Kirk--personal friend
8,200
Total
$ 290,800
*392 Petitioner characterizes these withdrawals as a loan to his son John, gifts to other relatives and friends, and his wife's own funds that she withdrew to pay bills. In addition, Cordes Finance Corp. paid certain of petitioner's personal living expenses in the total amount of $ 141,534 during the taxable year 1988. [6] These expenses represent charges to petitioner's American Express card in the amount of $ 137,479 and to Martin's Restaurant in the amount of $ 4,055. These expenses were claimed as "repossession expenses" and were deducted on Cordes Finance Corp.'s 1988 corporate income tax return. Petitioner admits that these expenses were personal expenditures, and Cordes Finance Corp. has conceded the disallowance of the claimed deduction. On May 20, 1992, Cordes Finance Corp. issued a reimbursement check to itself in the amount of $ 141,534 and charged Account No. 312 for the amount of petitioner's personal expenses as described above. *393 Other than the constructive dividends at issue in this case, petitioner's only known sources of income for the taxable year 1988 consisted of $ 30,000 interest income [7] from Cordes Finance Corp., $ 7,586 of Social Security benefits, and $ 900 of benefits from the Veterans' Administration. OPINION Constructive *394 Dividends
Petitioner contends that, although the $ 141,534 expenses paid by Cordes Finance Corp. on his behalf were personal and nondeductible, these expenses were paid out of monies owed to him by Cordes Finance Corp. and do not constitute constructive dividends. Furthermore, petitioner contends that the disbursements he directed Cordes Finance Corp. to make (the $ 290,800) represent loans or gifts from himself to the various recipients from his own funds held in the shareholder loan account. Petitioner asserts that he advanced several millions of dollars to Cordes Finance Corp. that had been accumulated by him over a span of 42 years, and accordingly, the distributions were merely repayments of debt owed to him by the corporation. On brief, petitioner now argues for the first time that these various distributions totaling $ 432,334 cannot constitute constructive or actual dividends because he was no longer a shareholder of Cordes Finance Corp. in 1988. See supra note 3. Although the parties stipulated that petitioner "owned, directly or indirectly, all of the stock" of the five corporations involved herein, petitioner now attempts to disavow stock ownership in Cordes *395 Finance Corp. with respect to the constructive dividend issue. Petitioner testified that he and his wife began transferring their stock in Cordes Finance Corp. to their children in 1963. He did not recall when the last stock transfer occurred, only that the children had held the stock for a long time. On reply brief, petitioner claims that he transferred the stock of Cordes Finance Corp. to his children in 1971. Petitioner argues that no adverse inference should be drawn from his failure to produce the stock ledgers to support his position. He claims that he would have offered the stock ledgers into evidence had he "known or had reason to know that Respondent or anyone in the IRS questioned the stock ownership" of Cordes Finance Corp. It is petitioner himself who has belatedly injected the issue of stock ownership of Cordes Finance Corp. Petitioner's reply brief is the first instance in these proceedings in which he formally asserts that he was not a shareholder of Cordes Finance Corp. in 1988 and, thus, could not have received dividends from the corporation. He did not raise the issue of stock ownership in the petition or any other pleadings filed in this case. He did not *396 seek permission to amend the petition to raise the issue or attempt to raise and address the issue at trial. This Court will not consider issues that are raised for the first time at trial or on brief. Rules 34(b)(2), 41(b); Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975). Moreover, petitioner has never sought to be relieved of his stipulation. Instead he tries to interpret it away, relying on improper ex parte statements that are not part of the evidentiary record (Rule 143(b)) and arguments that are at best disingenuous. We need not draw any inference from petitioner's failure to produce the stock ledgers. Even if the stock ledgers showed that petitioner was no longer a stockholder of record of Cordes Finance Corp. during 1988, record ownership of stock, standing alone, is not determinative of who is required to include any dividends attributable to such stock in gross income. Rather, beneficial ownership is the controlling factor. Walker v. Commissioner, 544 F.2d 419 (9th Cir. 1976), *397 revg. T.C. Memo. 1972-223; Ragghianti v. Commissioner, 71 T.C. 346, 349 (1978), affd. without published opinion 652 F.2d 65 (9th Cir. 1981); Cepeda v. Commissioner, T.C. Memo. 1994-62. Accordingly, this Court must consider not only whether there was a passage of bare legal title, but whether there was a retention or disposition of the benefits and burdens of the incidents of ownership. We must, therefore, look to which party has the greatest number of attributes of ownership. We must consider whether, while the legal ownership or title to the property may have passed, the actual benefits or control associated with stock ownership have remained with the original owner or transferor. We rely upon the objective evidence provided by the party's overt actions to make that determination. Ragghianti v. Commissioner, supra at 349-350 (citing Pacific Coast Music Jobbers, Inc. v. Commissioner, 55 T.C. 866, 874 (1971), affd. 457 F.2d 1165 (5th Cir. 1972)); Cepeda v. Commissioner, supra. *398 "Beneficial ownership is marked by command over property or enjoyment of its economic benefits." Cepeda v. Commissioner, supra.An economic benefit may take the form of relieving the recipient from a personal obligation. Sullivan v. United States, 363 F.2d 724, 728-729 (8th Cir. 1966); Smith v. Commissioner, 70 T.C. 651, 658 (1978). For example, in Yelencsics v. Commissioner, 74 T.C. 1513, 1532 (1980), the taxpayers' total control over a corporation and the use of corporate funds to satisfy personal debts resulted in constructive dividends, even though they did not hold legal title to the corporation's stock at the time of the advances. In this case, during the year at issue, petitioner held the office of president in Cordes Finance Corp. and exercised full control over the corporation. His complete control over Cordes Finance Corp. continued until at least 1992, when he caused it to reimburse itself and the other four corporations for the corporate income petitioner had improperly diverted to Account No. 312. He controlled the amounts and the timing *399 of payments from the Cordes Finance Corp. as well as the recipients of those payments. During the year at issue, petitioner caused that corporation to pay directly many of his personal expenses and to make distributions on his behalf as loans and gifts to relatives and friends. Therefore, we hold that, whether or not petitioner was a stockholder of record, petitioner had beneficial ownership of all of the stock of Cordes Finance Corp. in 1988. We must now consider whether the payments made by Cordes Finance Corp. on behalf of and for the benefit of petitioner during the taxable year 1988 were bona fide repayments of loans, as petitioner contends, or constructive dividends taxable under sections 301 and 316, as respondent contends. Sections 301 and 316 provide that a distribution of property made by a corporation with respect to its stock is a taxable dividend to the extent of a corporation's earnings and profits. Here, there were substantial earnings and profits of over $ 1 million. "A constructive dividend is paid when a corporation confers an economic benefit on a stockholder without expectation of repayment." Wortham Machinery Co. v. United States, 521 F.2d 160, 164 (10th Cir. 1975); *400 Williams v. Commissioner, 627 F.2d 1032, 1034 (10th Cir. 1980), affg. T.C. Memo. 1978-306. Petitioner received economic benefits from Cordes Finance Corp. without any expectation of repayment. All of the facts and circumstances surrounding the payments must be examined. Roschuni v. Commissioner, 29 T.C. 1193, 1201-1202 (1958), affd. 271 F.2d 267 (5th Cir. 1959). The issue as to whether a transaction between a shareholder and his closely held corporation represents bona fide indebtedness arises in various contexts: whether an advance by a shareholder to his corporation is a contribution to capital or a loan (debt vs. equity cases) or whether a distribution (or other economic benefit) from the corporation to the shareholder constitutes a dividend or a loan (dividend vs. loan cases). Alterman Foods, Inc. v. United States, 505 F.2d 873, 876-877 (5th Cir. 1974); Miele v. Commissioner, 56 T.C. 556, 567 (1971), affd. without published opinion 474 F.2d 1338 (3d Cir. 1973). Here petitioner *401 does not suggest that the 1988 distributions themselves (the payment of his personal expenses and the payment of money to others at his direction) constitute loans to him rather than dividends. Instead petitioner says these 1988 distributions were repayments by the corporation of loans he had made to the corporation sometime in the past. While the transactions we must examine are remote in time from the 1988 transactions, we apply the same factors in determining the existence of a bona fide indebtedness between Cordes Finance Corp. and petitioner. Courts have considered the following factors in deciding whether distributions to a stockholder are constructive dividends or reflective of a debtor-creditor relationship: (1) the extent to which the shareholder controls the corporation; (2) the earnings and dividend history of the corporation; (3) the magnitude of the advances and whether a ceiling existed to limit the amount the corporation advanced; (4) whether or not security was given for the loan; (5) whether there was a set maturity date; (6) whether the corporation ever undertook to force repayment; (7) whether the shareholder was in a position to repay the advances; *402 and (8) whether there was any indication the shareholder attempted to repay the advances.
Alterman Foods, Inc. v. United States, 505 F.2d at 877 n.7; see also Williams v. Commissioner, 627 F.2d at 1034-1035; Dolese v. United States, 605 F.2d 1146, 1153 (10th Cir. 1979). Due to the factual nature of such inquiries, the above factors are not exclusive, and no one factor is determinative. We have always examined transactions between closely held corporations and their shareholders with special scrutiny. Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1339 (1971), affd. without published opinion sub nom. Jiminez v. Commissioner, 496 F.2d 876 (5th Cir. 1974). We have held that petitioner was the beneficial owner of the stock of Cordes Finance Corp. during 1988. Petitioner controlled Cordes Finance Corp. and considered the corporation's funds available to him for his own and his wife's personal use. He made the decisions as to the timing, amount, and uses of the funds withdrawn. No dividends had ever been formally declared *403 and paid by Cordes Finance Corp. or any of the other corporations controlled by petitioner. Petitioner testified that the withdrawals from Cordes Finance Corp. were taken by petitioner as repayment of loans he had previously made to the corporation. First, there is no objective evidence of the existence of any such loans. He testified that, when Cordes Finance Corp. was incorporated, he contributed capital in the amount of some $ 100,000. There is no other evidence of any contributions to capital or loans to Cordes Finance Corp. Petitioner's mere statement that he considered the distributions to be repayments of loans is not sufficient to show that the intrinsic economic nature of the transactions themselves is that of a debt rather than of a constructive dividend. Williams v. Commissioner, 627 F.2d at 1034; Alterman Foods, Inc. v. United States, 505 F.2d at 876. Petitioner's mere declaration of intention does not create a loan and is not determinative without further evidence substantiating the existence of bona fide loans. Petitioner testified as to the purported sources of funds deposited in Account No. 312. *404 Petitioner testified that approximately $ 1 million deposited into Account No. 312 was the result of sales of Italian silk stockings he "liberated" from a German warehouse at the end of World War II. Petitioner also testified that he and his wife owned a life insurance company and a casualty company that were sold and the proceeds of which sales were deposited into Account No. 312. He stated that the life insurance company was incorporated in 1976 with $ 375,000 and was sold in 1981 for $ 750,000 and that the casualty company was incorporated in 1975 with $ 225,000 and was liquidated in 1986 with approximately $ 1 million in insurance policies at the time. The Court did not find petitioner's testimony credible, particularly in the absence of any documentation of these transactions. Petitioner did not present any documentary evidence to support his testimony. The only documents offered into evidence were the balance sheets (Schedules L) attached to the corporate income tax returns (Forms 1120) of Cordes Finance Corp. Petitioner claims that they reflect loans from petitioner and paid-in capital totaling $ 4,834,000 for taxable year 1982 and remaining approximately the same through *405 1986 when they totaled $ 5,721,000. [8] Tax returns do not establish the truth of the facts stated therein. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974). Moreover, these corporate returns do not show the existence of any loans from petitioner to the corporation. Petitioner testified that the receipts and canceled checks documenting the loans no longer exist because Cordes Finance Corp. retains corporate records dating back only 5 years. The Court found this testimony inherently incredible. *406 Although transactions between closely held corporations and their shareholders are often conducted in an informal manner, the informality relating to petitioner's purported loans to Cordes Finance Corp. goes far beyond what we would expect with respect to transactions of this size. [9] There is no documentation of loans to Cordes Finance Corp. to support petitioner's contention that the 1988 distributions were intended to be repayments of these purported loans. Electric & Neon, Inc. v. Commissioner, supra.There were no written agreements or notes evidencing the loans. While the loans were purportedly documented by "receipts" or "canceled checks", no receipts or canceled checks were produced. Moreover, even if such documents had existed, they would not supply any terms of the purported loan agreements. There was no security for the loans, no set maturity date, and no efforts by the corporation to enforce repayments. By all indications, or lack thereof, there is no expression of any obligation on the part of petitioner to lend money to Cordes Finance Corp. or any obligation on the part of Cordes Finance Corp. to repay any purported loans. Electric & Neon, Inc. v. Commissioner, supra. *407 Petitioner's control over the corporation, the existence of substantial earnings and profits, and the fact that no dividends had ever been declared satisfy the Court that there were no bona fide debts. Petitioner simply used the corporation as his own personal deep pocket. Thus, in conclusion, petitioner has failed to carry his burden of proving that he was entitled to the funds distributed to him, or paid on his behalf, as repayment of loans. The facts belie any intention to create a real debtor-creditor relationship between petitioner and Cordes Finance Corp. Therefore, we hold that petitioner received constructive dividends in the total amount of $ 432,334 ($ 290,800 + $ 141,534) from Cordes Finance Corp. in the taxable year 1988. Additions to Tax
1. Section 6653(a)(1) Addition to Tax
Respondent has determined an addition to tax under section 6653(a)(1). *408 Section 6653(a)(1) provides an addition to tax for negligence or intentional disregard of rules or regulations. "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and revg. in part 43 T.C. 168 (1964)). Petitioner has the burden of establishing error in respondent's determination of additions to tax under section 6653(a). Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioners have not carried their burden. Moreover, the record in this case amply supports a finding of both negligence and intentional disregard of rules or regulations. The Court sustains the negligence additions to tax for 1988. 2. Section 6661 Addition to Tax
Respondent also determined an addition to tax under section 6661. Section 6661(a) imposes an addition to tax for a substantial understatement of income tax. The understatement is "substantial" if it *409 exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1)(A). The understatement of tax for the taxable year 1988 was substantial in this case. Section 6661(b)(2)(B) reduces the amount of the understatement potentially subject to the addition if the taxpayer gave substantial authority for his or her position or adequately disclosed on the return or in a statement attached to the return any relevant facts affecting the items that led to the determination of an understatement. Section 1.6661-3, Income Tax Regs., defines "substantial authority". Petitioners have not met these requirements, and we have no basis for reducing the understatement. We sustain respondent's determination of an addition for substantial understatement of income tax in 1988. To reflect the above holdings, Decision will be entered under Rule 155. Footnotes
1. Respondent originally asserted that petitioner Edmund J. Cordes had received constructive dividends as a result of monies deposited into a "holding account" (Account No. 312) of Cordes Finance Corp. Respondent concedes that the deposit of these funds into Account No. 312 does not constitute constructive dividends to petitioner. These funds represent income improperly diverted by petitioner from other corporate entities that he controls to Cordes Finance Corp. Petitioner later caused Cordes Finance Corp. to repay those funds to the other corporations as will be discussed below. See infra↩ note 5. Respondent now maintains that the payment of petitioner's personal expenses as well as certain withdrawals from Account No. 312 during 1988 constitute constructive dividends to petitioner.
2. This increase in taxable Social Security benefits is an automatic adjustment resulting from the increase in petitioner's adjusted gross income with respect to the constructive dividends issue. See sec. 86(a), (b), and (c).↩
3. This fact was stipulated by the parties. Without requesting to be relieved of this stipulation, petitioner now argues that he and his wife were not shareholders of Cordes Finance Corp. during 1988 and, therefore, could not have received dividends, actual or constructive, in that year. Petitioner testified that he and his wife began to divest themselves of their stockholdings to their children in 1963. On reply brief, petitioner claims that he transferred his stock in Cordes Finance Corp. to his children in 1971. However, as will be discussed in the opinion below, petitioner has not presented any evidence to support his testimony, and we find his testimony unworthy of belief. We find the facts to be as the parties have stipulated.↩
4. The record shows that petitioner continued to divert income from those corporations to Account No. 312 in 1989 and 1990.↩
1. Part of the diverted income deposits referred to above represents income properly belonging to Cordes Finance Corp. that petitioner caused to be credited to Account No. 312 rather than reported as income to Cordes Finance Corp.↩
5. On May 20, 1992, Cordes Finance Corp. issued a check to Eddie Cordes, Inc., in the amount of $ 172,828 to reimburse Eddie Cordes, Inc., for the income mishandled by petitioner during 1988. On May 20, 1992, Cordes Finance Corp. issued a reimbursement check to itself in the amount of $ 571,035 and charged Account No. 312 with that amount, which represents the amount of Cordes Finance Corp.'s income mishandled by petitioner during 1988. On May 21, 1992, Cordes Finance Corp. issued another reimbursement check to itself in the amount of $ 81,269 and charged Account No. 312 with that amount. That amount represents income misdirected by petitioner from the reimbursement of repossession expenses paid to Cordes Finance Corp. during 1988 by its customers. On May 21, 1992, Cordes Finance Corp. issued a reimbursement check to itself in the amount of $ 139,660 and charged Account No. 312 with that amount, which represents the amount of income petitioner misdirected from Cordes Dodge and John Cordes, Inc., during 1988. While it is not wholly clear as to why that reimbursement check was issued to Cordes Finance Corp. rather than to the two corporations whose income had been improperly diverted by petitioner, apparently those two corporations owed Cordes Finance Corp. for tags, titles, and taxes, and the check was reimbursement for those items. On July 29, 1991, Cordes Finance Corp. issued a check to Cordes Building Corp. in the amount of $ 200,000 to reimburse Cordes Building Corp. for the amount of income petitioner misdirected from the company during 1988. Petitioner also caused Cordes Finance Corp. to make similar reimbursements for 1989 and 1990 diverted income.↩
6. Similarly, in 1989 and 1990, Cordes Finance Corp. paid certain of petitioner's personal living expenses, composed of charges to petitioner's American Express card and charges to Martin's Restaurant.↩
7. Petitioner testified that he charged Cordes Finance Corp. interest, at a rate of 8 percent per annum, on the funds owed to him and his wife. When questioned that the $ 30,000 interest payment they received for 1988 seems low for the millions that petitioners purportedly had lent to the corporation, petitioner testified that Cordes Finance Corp. did not have the money to pay the full amount of interest due per year. We note that there were substantial amounts of corporate income for petitioner to divert from the various corporations, including Cordes Finance Corp., to Account No. 312. The amount of income of Cordes Finance Corp. that petitioner diverted to Account No. 312 in 1988 totaled $ 652,304.↩
8. Schedule L of Cordes Finance Corp.'s Form 1120 for 1982 reflects $ 2,834,000 on line 16 (Mortgages, loans, bonds payable in less than 1 year) and $ 2,000,000 on line 22 (Paid-in or capital surplus). The Schedules L attached to the Forms 1120 for taxable years 1983 through 1988 reflect the following amounts: ↩
Year
Line 16
Line 22
1983
$ 2,835,000
$ 2,000,000
1984
2,740,500
2,000,000
1985
1,303,000
4,000,000
1986
1,721,000
4,000,000
1987
3,456,850
4,000,000
1988
5,233,800
4,000,000
9. See Crowley v. Commissioner, T.C. Memo. 1990-636, affd. 962 F.2d 1077↩ (1st Cir. 1992).