JOHN AND STACIA EPPS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ELECTRIC MOTOR SERVICE COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Epps v. Commissioner
Docket Nos. 12601-93, 13484-93[1]
United States Tax Court
T.C. Memo 1995-297; 1995 Tax Ct. Memo LEXIS 294; 70 T.C.M. (CCH) 1; July 3, 1995, Filed *294 Decision will be entered under Rule 155. For petitioners: James Allen Brown. For respondent: David L. Jordan and John R. Keenan. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes, an addition to tax, and accuracy-related penalties as follows: JOHN AND STACIA EPPS -- Docket No. 12601-93 Addition to Tax
Penalty Year
Deficiency
Sec. 6661
Sec. 6662 1988
$ 8,645.96
$ 2,311
--   1989
1,966.00
--  --   1990
8,374.74
--  $ 2,174.75
ELECTRIC MOTOR SERVICE COMPANY, INC. -- Docket No. 13484-93 Penalty Year Ended
Deficiency
Sec. 6662 April 30, 1989
$ 600.30
--   April 30, 1990
2,098.50
$ 148.99
April 30, 1991
2,544.75
190.45
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. After concessions, the issues for decision are as follows: 1. Whether petitioner's [2] withdrawals are constructive dividends or bona fide loans. We hold that the withdrawals are constructive dividends. *295 2. Whether petitioners are liable for the addition to tax imposed under section 6661 for the taxable year 1988. We hold that they are. 3. Whether petitioners are liable for the penalty imposed under section 6662 for substantial understatement of tax for the taxable year 1990. We hold that they are. 4. Whether petitioner EMSC had imputed interest income for the taxable years ending April 30, 1989, April 30, 1990, and April 30, 1991. Since we hold that the withdrawals were constructive dividends, we need not address this issue. 5. Whether petitioner EMSC is liable for the penalty imposed under section 6662 for the fiscal years ending April 30, 1990, and April 30, 1991. We hold that it is. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation and the exhibits attached thereto are incorporated *296 by this reference. Petitioners were residents of Little Rock, Arkansas, at the time the petition was filed. EMSC, an Arkansas corporation, had its principal office in Little Rock, Arkansas, at the time of filing its petition. EMSC was incorporated in April 1977. Petitioners are, and have been since EMSC's incorporation, the sole shareholders of EMSC, with John Epps owning 180 shares of EMSC stock and Stacia Epps owning 120 shares. Petitioner is the president of EMSC and has been since its incorporation. Petitioners are the only directors on EMSC's board of directors. EMSC files its corporate Federal income tax returns using a fiscal year ending April 30. EMSC employs the firm Pyramid Data for bookkeeping services and for assembling EMSC's financial reports. EMSC employs the accounting firm of Cobb and Suskie, Ltd., to prepare the corporate income tax return. Cobb and Suskie, Ltd., however, does not conduct an annual audit of EMSC. Petitioner customarily withdrew corporate funds for his personal use, such practice commencing some time shortly after EMSC's incorporation and continuing through the years at issue. Petitioner's withdrawals took various forms. Some withdrawals consisted *297 of various personal expenses paid by EMSC on behalf of petitioner. Petitioner also received a $ 100 check from EMSC every week during 1989 on the same day he received his weekly pay check. Petitioner's withdrawals were recorded on EMSC's books as stockholder advances. The shareholder withdrawals were reported as "Other Assets" on EMSC's financial statements. The balances of the stockholder advances account were as follows: Date Amount Dec. 31, 1987
$ 24,594.65
Apr. 30, 1988
4,238.88
Dec. 31, 1988
36,132.91
Apr. 30, 1989
55,247.21
Dec. 31, 1989
76,544.95
Apr. 30, 1990
80,197.17
Dec. 31, 1990
112,601.57
The stockholder advances account was a running account. Petitioner made repayments through the crediting of year-end bonuses against his account. [3] In April 1992, petitioners transferred title to the condominium in which they lived to EMSC, in return for which $ 80,000 was credited to petitioner's outstanding balance of the stockholder advances account. *298 Petitioner never executed any promissory notes in favor of EMSC for the funds he withdrew from the corporation. There was no interest charged on the amounts withdrawn from EMSC. EMSC never placed a limit on the amounts petitioner could withdraw. Petitioner never secured any of the withdrawals from EMSC with collateral. There was no specified repayment schedule for the withdrawals from EMSC. When petitioner applied for a $ 30,000 loan from Union National Bank of Arkansas in June 1989, petitioner reflected the amounts he had withdrawn from EMSC as a debt in the amount of $ 55,250 on his personal financial statement. However, the financial statement indicates that there was a demand note and that interest was charged at the rate of 9 percent on the debt when, in fact, no note existed, and no interest was charged. EMSC's books and records also reflect another account entitled "Note Payable -- Stockholder", which represents petitioner's purported loans to EMSC. The books and records show balances of the note payable to stockholder account for the years at issue as follows: Date Amount Dec. 31, 1987
$ 12,491.25
Dec. 31, 1988
--   Dec. 31, 1989
27,233.25
Dec. 31, 1990
22,223.55
Dec. 31, 1991
16,578.31
Dec. 31, 1992
--   *299 EMSC did not execute any notes to evidence its loans from petitioner. Interest was not charged or accrued on these loans from petitioner to EMSC. Petitioner did not prepare written repayment schedules for his loans to EMSC. EMSC did not declare or pay a dividend from its incorporation on April 20, 1977, through the fiscal year ending April 30, 1992. EMSC paid a $ 5,000 dividend for the first time during the fiscal year ending April 30, 1993, which was after the audit by the Internal Revenue Service had commenced. EMSC had earnings and profits in excess of the amounts determined to be constructive dividends by respondent. In her notice of deficiency, respondent determined that the withdrawals petitioner made from EMSC during the taxable years 1988, 1989, and 1990 constituted dividend distributions. Alternatively, respondent determined that, if the amounts withdrawn from EMSC represent loans, petitioners have deemed dividends in the amount of the imputed interest which should have been charged on the loans. Respondent also issued a notice of deficiency to EMSC wherein she determined that EMSC had imputed interest income if the withdrawals are held to constitute loans. [4]
*300 OPINION Constructive Dividends Versus Loans
We must determine whether petitioner's withdrawals from EMSC were bona fide loans, as petitioners contend, or constructive dividends taxable under sections 301 and 316, as respondent contends. Sections 301 and 316 provide that a distribution of property made by a corporation with respect to its stock is a taxable dividend to the extent of a corporation's earnings and profits. The burden of proof is on petitioners to show that the amounts in issue were loans and not constructive dividends. Rule 142(a); . We also note that we have always examined transactions between closely held corporations and their shareholders with special scrutiny. , affd. without published opinion sub nom. . Whether a shareholder's withdrawals from a corporation are loans or distributions depends on whether, at the time of the withdrawals, the shareholder intended to repay the amounts received and the corporation *301 intended to require payment. , affd. without published opinion . Petitioner testified that he made the withdrawals from the corporation in good faith and intended to repay them. Even so, a mere declaration by a shareholder that he intended a withdrawal to constitute a loan is insufficient if the transaction fails to meet more reliable indicia of debt. , affg. ; . Whether shareholder withdrawals are bona fide loans or dividend distributions is a question of fact, the answer to which must be based upon a consideration and evaluation of all surrounding circumstances. . Courts have considered the following factors in deciding whether distributions to a stockholder are constructive dividends or loans: 1. The extent to which the shareholder *302 controls the corporation; 2. the earnings and dividend history of the corporation; 3. the magnitude of the advances and whether a ceiling existed to limit the amount the corporation advanced; 4. how the parties recorded the advances on their books and records; 5. whether the parties executed notes; 6. whether interest was paid or accrued; 7. whether or not security was given for the loan; 8. whether there was a set maturity date; 9. whether the corporation ever undertook to force repayment; 10. whether the shareholder was in a position to repay the advances; and 11. whether there was any indication the shareholder attempted to repay the advances. ; see also ; , affd. without published opinion . Due to the factual nature of such inquiries, the above factors are not exclusive, and no one factor is determinative. Unfettered control of a corporation by a shareholder weighs in favor of a constructive dividend *303 determination. Petitioners are the sole shareholders of EMSC. Petitioners had the authority to make the decisions as to the timing, amount, and use of the funds they withdrew. A corporate history of not declaring and paying dividends in spite of the existence of substantial earnings and profits weighs on the side of a constructive dividend determination. Id.; see also , affd. . From the time of its incorporation in 1977 through the fiscal year ending April 30, 1992, EMSC did not declare or pay a dividend, despite having earnings and profits during these years. The absence of the standard indicia of indebtedness also weighs on the side of a constructive dividend determination. There were no written agreements or notes evidencing the loans. There was no interest charged on the amounts withdrawn. There was no ceiling limiting the amount petitioner could withdraw. There was no security for the loans, no set maturity date, and no efforts by the corporation to enforce repayments. EMSC did *304 not pass a corporate resolution authorizing the advances. No corporate minutes for the years in question exist substantiating any formal action taken by the corporation's board of directors. Although transactions between closely held corporations and their shareholders are often conducted in an informal manner, the informality relating to petitioners' purported loans from EMSC goes far beyond what we would expect, especially considering that the amount of withdrawals exceeded $ 112,000 in 1990. Petitioner contends that the informality with which he withdrew money from EMSC was typical of the manner in which he dealt with EMSC and thus should not be held against him. Petitioner pointed out that he made loans to EMSC without use of a note, without charging interest, and without a repayment schedule. We find that this fact, along with petitioner's testimony at trial, [5] tends to show that petitioner used his corporation as a deep pocket from which he could extract funds at will and deposit funds at his convenience. *305 Petitioners place a great deal of emphasis upon the corporation's accounting of the withdrawals as loans on its books as evidence of an intent to repay the advances. While this factor does weigh in favor of finding that the amounts withdrawn were loans, this factor is not determinative without further evidence substantiating the existence of a bona fide loan. . As discussed above, the standard indicia of indebtedness are absent in this case. Petitioners also emphasize their financial ability to repay the withdrawals as proof that they intended to repay them. Petitioners' financial statement dated June 6, 1989, shows that their net worth was $ 516,960. Of this total, $ 215,000 reflected the value of their real estate holdings, and $ 227,000 reflected the value of their stock ownership in EMSC. There is no evidence that petitioner had committed himself, by way of mortgage or otherwise, to apply his share of the real property proceeds toward the payment of his stockholder advances account. See . Nor do we consider the value of petitioners' *306 equity interest in EMSC as significant evidence of petitioner's intention to satisfy his purported debt to EMSC. See , affd. . Petitioners also point to a financial statement which appears to acknowledge petitioner's indebtedness to EMSC. However, we note that, while the financial statement acknowledges the purported loan, it inaccurately states that a note existed and that interest was charged on the loan. These inconsistencies further lend credence to the conclusion that the withdrawals were not bona fide loans but were instead a mere bookkeeping device by which petitioner could use corporate funds at will. Petitioners also contend that their "repayments" demonstrate their intention to repay the amounts withdrawn. Usually, a shareholder's repayments are strong evidence that a withdrawal was a loan. The repayments, though, must be bona fide. Petitioner's purported repayments were made in the form of year-end bonuses which petitioner applied against the outstanding loan balance. With *307 regard to these year-end bonuses which EMSC credited against his account, we are mindful that petitioner had the authority to determine the size of his salary and year-end bonuses. We find that EMSC's declaration of year-end bonuses and petitioner's subsequent use of those bonuses to credit his loan account were simply bookkeeping entries designed to give his withdrawals the color of loans. See Under these facts, where there was no note, no interest charged, and no repayment schedule, we believe that these bookkeeping repayments do not establish the existence of bona fide loans. Petitioners also contend that the transfer of their condominium to EMSC is a repayment which shows that their withdrawal was a bona fide loan. Repayment before a tax audit is, of course, more persuasive evidence of an intention to create a debt than repayment after such an audit has commenced. ; . Since this transfer occurred after respondent began her audit of EMSC, we do not find it to be persuasive *308 evidence of an intention to create a real debt. Thus, in conclusion, petitioners have failed to carry their burden of proving that they intended at the time the amounts were withdrawn to repay the amounts withdrawn. The totality of facts belies any intention to create a real debtor-creditor relationship. Petitioner simply used the corporation as his own personal deep pocket, from which he regularly and systematically withdrew funds at will and deposited funds at his convenience. Accordingly, we find the net amounts that petitioner withdrew during 1988, 1989, and 1990 to be, in substance, dividend distributions that are taxable to petitioners. Because EMSC had accumulated and current earnings and profits in these years in excess of the net amount of the withdrawals, the entire amount of the withdrawals constitutes taxable dividends. [6]
*309 Section 6661 Addition to Tax -- Petitioners
Respondent determined that petitioners were liable for an addition to tax under section 6661 for the taxable year 1988. Section 6661(a) imposes an addition to tax for a substantial understatement of income tax. The understatement of tax for the taxable year 1988 is substantial within the meaning of section 6661(b)(1)(A). An understatement is reduced to the extent it is (1) based on substantial authority or (2) adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). We find that substantial authority for petitioners' position did not exist. We also find that petitioners did not adequately disclose the relevant facts in their joint return or in a statement attached to their joint return. The fact that EMSC's corporate income tax return may have disclosed the existence of the loans does not constitute adequate disclosure for purposes of section 6661(b)(2)(B). See . Accordingly, we hold that they are liable for the addition to tax under section 6661. Section 6662 Penalty -- Petitioners
Respondent determined *310 that petitioners were liable for an accuracy-related penalty for the year 1990 pursuant to section 6662. Section 6662(a) and (b)(2) imposes a penalty on any substantial understatement of income tax. An understatement is reduced to the extent it is (1) based on substantial authority, or (2) adequately disclosed in the return or in a statement attached to the return. Sec. 6662(d)(2)(B). Petitioners' understatement in 1990 is substantial within the meaning of section 6662(d). As above, petitioners have failed to show that they fell within the exceptions provided in section 6662(d)(2)(B). Accordingly, respondent's determination of a penalty for substantial understatement of tax is sustained. Section 6662 Penalty -- EMSC
Respondent determined that EMSC was liable for penalties for negligence under section 6662 for the years ending April 30, 1990, and April 30, 1991. Section 6662(a) and (b)(1) imposes a penalty on any portion of an underpayment which is attributable to negligence or disregard of rules and regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the statute, and the term "disregard" includes any careless, reckless, or intentional *311 disregard. Sec. 6662(c). Negligence also includes a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. ; . Under section 6664(c), the accuracy-related penalties can be avoided if a taxpayer establishes that he had reasonable cause for the underpayment and acted in good faith. Reasonable cause can be established if the taxpayer can show that he reasonably relied on the advice of a competent and experienced accountant to prepare his return. . The taxpayer must also show that he supplied all necessary information to the accountant and that the error on the return resulted from the accountant's mistake. . While the record shows that EMSC had an independent bookkeeping service as well as an accountant, there is no proof that the errors on the return resulted from the accountant's mistake. Accordingly, we sustain respondent's *312 determination of penalties for negligence. [7]
To reflect the above holdings and the concessions by petitioners, Decisions will be entered under Rule 155. Footnotes
1. These cases were consolidated for purposes of briefing and opinion.↩
2. References to petitioner will be to John Epps, references to petitioners will be to John and Stacia Epps, and references to EMSC will be to Electric Motor Service Company, Inc.↩
3. EMSC's books and records show that, between 1978 and 1988, petitioner had credited year-end bonuses in excess of $ 119,000 to his outstanding balance.↩
4. In the notice of deficiency, respondent also made several adjustments with respect to medical expenses and dues and subscription expenses. Prior to trial, petitioners conceded these adjustments.↩
5. Petitioner testified at trial that he had difficulty separating himself from EMSC.↩
6. We do, however, disagree with respondent's determination of the amounts of the constructive dividends. The Rule 155 calculation should reflect the fact that the total of the constructive dividends for the 3-year period should be no greater than the difference between the stockholder advances account on Dec. 31, 1987 ($ 24,594.65), and the balance on Dec. 31, 1990 ($ 112,601.57), namely $ 88,006.92. In the statutory notice of deficiency, respondent determined constructive dividends for the 3-year period in excess of this amount. We also disagree with the manner in which respondent took into account the "Note Payable -- Stockholder" account to calculate the amount of the constructive dividends. If respondent is to properly consider the net balances of both accounts, the Rule 155 calculation should reflect the year-end balances of the "Note Payable -- Stockholder" account. We note that the balance of the note payable account on Dec. 31, 1987, was $ 12,491.25, and the balance on Dec. 31, 1990, was $ 22,223.55. If this account is to be considered, this $ 9,732.30 increase in the balance of this account should reduce the total constructive dividends for the 3-year period accordingly.↩
7. However, the Rule 155 computation should reflect the fact that we have herein held the withdrawals to be constructive dividends, and, accordingly, the penalties should be recomputed on the basis of the deficiencies as conceded by EMSC and without the imputed interest.↩