T.C. Memo. 1996-485

UNITED STATES TAX COURT

RAYMOND R. WEIGEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13607-94.                    Filed October 29, 1996.

<u>John D. Moats</u>, for petitioner.

<u>William R. Davis, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FAY, <u>Judge</u>:  By statutory notice of deficiency dated
April 29, 1994, respondent determined deficiencies in and
additions to petitioner's Federal income taxes in the amounts
listed below:

|      |            | Additions to Tax Sec. |
| Year | Deficiency | 6651(a) |
| --- | --- | --- |
| 1987 | $55,011 | $13,751 |
| 1988 | 55,973 | 13,233 |
| 1989 | 1,842 | -- |
| 1990 | 28,053 | 7,010 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  The issues for decision are:[1]

(1)  Whether any portion of improvements made by Goshorn Construction & Pipeline, Inc. (Goshorn), petitioner's wholly owned corporation, to property owned by petitioner and leased to Goshorn in 1987 constituted a constructive dividend to petitioner.

(2)  Whether any portion of disbursements made to or on behalf of petitioner by Goshorn during the years 1987 through 1990, constituted dividends to petitioner.

(3)  Whether, pursuant to section 6651(a), petitioner is liable for additions to tax for the tax years 1987, 1988, and 1990.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioner resided in Arvada, Colorado.  Tangaree Weigel, not a party to this case, was petitioner's wife for all the years at issue.

---

[1]In the statutory notice of deficiency, respondent determined that petitioner did not have a sufficient basis under sec. 1366(d)(1) to deduct S corp. losses of $215,205 in the 1989 tax year.  Petitioner conceded this determination.

## Leasehold Improvements

From 1980 through the years at issue, petitioner was the sole stockholder of Goshorn, a pipeline construction corporation. In 1985, Goshorn had its principal offices at 52nd and Wadsworth Boulevard in Denver, Colorado (Denver premises). However, due to an urban renewal project, Goshorn's Denver premises were condemned and Goshorn was forced to relocate. Goshorn had several criteria for the location of its new offices, including heavy industrial zoning, adequate yard space for vehicles and equipment, and office space.

Goshorn located three lots of real property at 5300 Eudora Street in Commerce City, Colorado (Eudora property), which met its criteria for a new location. The Eudora property could be zoned to accommodate heavy industrial use, had ample yard space, and had an existing house that could be used as an office. Petitioner purchased the Eudora property for $500,000 in 1985.[2] During 1987 and in later years, petitioner leased the third lot (lot 3) to Goshorn for $5,000 a month. The leasing arrangement was memorialized in a standard two-page lease that petitioner's secretary purchased from an office supply store. Petitioner was not able to locate the document at trial.

---

[2]Petitioner's accountant advised petitioner to purchase the property and lease the land back to Goshorn Construction & Pipeline, Inc. (Goshorn), in order to reduce any gain on a subsequent sale of the property.

Commerce City required that certain improvements be made to the Eudora property in order to obtain the rezoning Goshorn needed to conduct its business. During 1987, Goshorn made improvements to lot 3 necessary to comply with Commerce City's industrial zoning requirements and to meet Goshorn's business needs. The required improvements, costing $134,752.52, consisted of a paved parking lot and improvements to convert the pre-existing building on lot 3 into office space. Goshorn occupied and used the premises from the time the improvements were made until it ceased doing business in 1992.

During 1985, petitioner, in consultation with Lloyd Sweet, Jr., petitioner's certified public accountant, and with the real estate agent involved in the purchase of the Eudora property, determined that the fair market rental value of the Eudora property and surrounding rental properties was $1,000 per acre per month. Lot 3, which was the portion Goshorn leased, con-sisted of 5 acres. Thus, a rent of $5,000 per month was charged. The leasehold improvements were reported on Form 4562, Deprecia-tion and Amortization, as 5-year property on Goshorn's Federal tax returns.

In 1992, Goshorn stopped renting lot 3 from petitioner. Subsequently, lot 3 was leased to a third party for $4,500 per month.

Respondent determined that the leasehold improvements made to the Eudora property by Goshorn during 1987 constituted a tax-

able dividend to petitioner for that year. Petitioner challenges this conclusion, claiming that the leasehold improvements were not taxable dividends.

Loans

During the taxable years at issue, Goshorn made transfers of cash to petitioner. There are no notes memorializing any of these cash transfers.

Goshorn's transfers to petitioner were disclosed in Goshorn's financial statements that were given to third parties. Goshorn has never declared a dividend. Respondent determined in the notice of deficiency that these advances, characterized as loans on Goshorn's financial statements, were in fact dividends to petitioner. Respondent determined that petitioner received dividend income in the following amounts:

| Tax Year | Amount |
|----------|--------|
| 1987 | $21,040 |
| 1988 | 216,621 |
| 1989 | 52,775 |
| 1990 | 102,196 |

According to its 1986 fiscal year Federal income tax return, as of November 1, 1987, Goshorn had no outstanding loans to stockholders and had unappropriated retained earnings of $867,958. During Goshorn's tax year ending October 31, 1988, Goshorn made transfers of $350,059.92 to or for the benefit of petitioner, and petitioner was credited with $168,124[3] in reduc

---

[3]The $168,124 credited to petitioner during the fiscal year ending Oct. 31, 1988, consisted of two overall amounts. The

tions to these transfers. Included in the amounts transferred for petitioner's benefit by Goshorn was $5,725.02 to Ray Weigel, Inc. No amounts were credited as reductions to the transfers from Goshorn to Ray Weigel, Inc., during Goshorn's tax year ending October 31, 1988. Thus, there was a net transfer to petitioner for the tax year ending October 31, 1988, of $181,935.92. As of October 31, 1988, Goshorn reported unappropriated retained earnings of $990,035.

For its tax year ending October 31, 1989, Goshorn made two separate transfers to petitioner or to entities solely owned by petitioner.

First, Goshorn recorded a transfer of $126,126 to Technical Packaging, Inc., d.b.a. Tek-Pak (Tek-Pak), an S corporation engaged in the packaging business. During the tax years at issue, petitioner was the sole shareholder of Tek-Pak. As of October 31, 1990, Goshorn's books and records reflected that the "amount receivable" from Tek-Pak had been reduced by $104,213, to $21,913. As of September 30, 1991, Goshorn's books and records reflected that the "amount receivable" from Tek-Pak had been reduced to zero.

Second, Goshorn recorded a transfer to petitioner personally, in the amount of $147,776.01. Petitioner was credited

---

first $60,000 was a credit for the $5,000 monthly rent due petitioner from Goshorn. The remaining $108,124 consisted of three transfers from petitioner's wife, Tangaree Weigel, to Goshorn.

with a $45,000 reduction to that amount for the accrual of Goshorn's rent to petitioner. For Goshorn's tax year ending October 31, 1989, Goshorn reported unappropriated retained earnings of $867,324.

During all of the tax years at issue, petitioner and Goshorn each held 50 percent of the shares of stock in Racon Construction Co. (Racon), a C corporation engaged in construction. The combining balance sheet of Goshorn and Racon for their tax years ended October 31, 1990, reflects as an asset $392,617 as the amount due from stockholder. The detailed balance sheets of Goshorn state that, as of September 30, 1991, there was $379,898.05 due from the stockholder.

Late Filing Penalty

Petitioner requested an automatic extension for filing a 1987 Federal income tax return until August 15, 1988, and a further extension for filing until October 15, 1988. Petitioner and his wife filed their joint 1987 Federal income tax return on August 16, 1990.

Petitioner applied for and received an extension of time to file a 1988 Federal income tax return until October 16, 1989. Petitioner and his wife filed their joint 1988 Federal income tax return on October 11, 1990. Petitioner and his wife filed their joint 1990 Federal income tax return on October 6, 1992.

OPINION

Leasehold Improvements

Respondent argues that $134,752.52 in leasehold improvements made to lot 3 of the Eudora property, which was owned by petitioner and leased to Goshorn, constituted constructive dividend income to petitioner. For the following reasons, we disagree with respondent's argument.

Generally, improvements made by a lessee to a leasehold estate, where fair rent to the lessor of the property is otherwise provided for, do not result in realization of income by the lessor in the year of improvement, or upon the termination of the lease. Sec. 109; sec. 1.109-1, Income Tax Regs; see M.E. Blatt Co. v. United States, 305 U.S. 267, 277 (1938). Here, petitioner and Goshorn agreed on an equitable rent of $5,000 per month for the Eudora property.

Respondent directs our attention to Jaeger Motor Car Co. v. Commissioner, T.C. Memo. 1958-223, affd. 284 F.2d 127 (7th Cir. 1960), where we decided a taxpayer received dividend income consisting of improvements made by his wholly owned corporation to a building that it leased from him. The outcome was predicated, in part, on the year-to-year term of the lease between the taxpayer and his corporation. Id. Here, petitioner's secretary selected a sample form with a month-to-month lease term. Therefore, respondent contends that Goshorn's leasehold improvements resulted in dividend income to petitioner.

In evaluating a leasing arrangement between a taxpayer and his wholly owned corporation, we must consider not only the lease itself, but also the testimony of witnesses and the surrounding circumstances.  Cf. Stinnett v. Commissioner, 54 T.C. 221, 233 (1970) (explaining that many factors are reviewed by a court in determining if a lease is for a specified or indefinite term). Petitioner testified that the premises were purchased solely with the intent of leasing a portion to Goshorn.  We find it probative that Goshorn did lease these premises for many years, up until the time it was forced out of business for financial reasons. Further, the nature of the improvements indicates that they were made for the long-term benefit of Goshorn's business.  Given the testimony and the surrounding circumstances, we believe petitioner intended that the leasing arrangement with Goshorn would continue for an extended duration.

The facts herein are more in the mode of Bardes v. Commissioner, 37 T.C. 1134 (1962).  The taxpayer in Bardes leased real property to his closely held corporation, and that corporation constructed a building costing $848,184 on the taxpayer's land. Id. at 1141.  We held that the improvements made by the corporation did not result in dividend income to the taxpayer.  Id. at 1149.

Like the taxpayer in Bardes, petitioner here has leased the land to his wholly owned corporation under commercially reasonable terms.  The rent was established at an amount commensurate

with that charged for similar parcels of real estate in the same locale.  Additionally, petitioner intended that the duration of the lease extend well beyond the month-to-month term indicated in the document.  Thus, as in Bardes, the expenditures incurred by petitioner's corporation were in fact made pursuant to bona fide business transactions between petitioner and Goshorn.  Consequently, we hold that petitioner did not realize dividend income as a result of Goshorn's expenditures for leasehold improvements.

Loans

A distribution by a corporation to a shareholder constitutes a loan, rather than a constructive dividend, if, at the time of its disbursement, the parties intended that the shareholder repay the loan.  Crowley v. Commissioner, 962 F.2d 1077, 1079 (1st Cir. 1992), affg. T.C. Memo. 1990-636; Wiese v. Commissioner, 93 F.2d 921 (8th Cir. 1938), affg. 35 B.T.A. 701 (1937); Miele v. Commissioner, 56 T.C. 556, 567 (1971), affd. without published opinion, 474 F.2d 1338 (3d Cir. 1973).  The issue of whether a transfer by a corporation to a shareholder constitutes a loan or a constructive dividend is a factual issue, which "depends primarily upon the good-faith intention of the shareholder to repay the amounts received and the intention of the corporation to require repayment."  J.A. Tobin Constr. Co. v. Commissioner, 85 T.C. 1005, 1022 (1985).  Transfers to a shareholder of a closely held corporation require special scrutiny because of the unfettered control exercised by that shareholder.  Id.  Peti-

tioner bears the burden of proof that the amounts in question were loans and not constructive dividends. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Petitioner testified that the amounts were intended as loans. His statement of intent must be considered in the context of the surrounding circumstances. <u>Williams v. Commissioner</u>, 627 F.2d 1032, 1034 (10th Cir. 1980), affg. T.C. Memo. 1978-306. Courts have typically weighed the following objective factors in order to determine whether a shareholder's receipts from a corporation constitute dividends rather than loans:

(a) The taxpayer's degree of control over the corporation;

(b) the existence of restrictions on the amount of disbursements;

(c) the corporate earnings and dividends history;

(d) the use of customary loan documentation, such as promissory notes, security agreements or mortgages;

(e) the ability of the shareholder to repay;

(f) the treatment of the disbursements on the corporate records and financial statements;

(g) the creation of legal obligations, such as payment of interest, repayment schedules, and maturity dates;

(h) the corporation's attempts to enforce repayment; and

(i) the shareholder's intention or attempts to repay the loan.

Busch v. Commissioner, 728 F.2d 945, 948 (7th Cir. 1984); Dolese v. United States, 605 F.2d 1146 (10th Cir. 1979); Alterman Foods, Inc. v. United States, 505 F.2d 873, 877 n.7 (5th Cir. 1974); Nahikian v. Commissioner, T.C. Memo. 1995-161. No single factor is determinative. Alterman Foods, Inc. v. United States, 222 Ct. Cl. 218, 223, 611 F.2d 866, 869 (1979); Boecking v. Commissioner, T.C. Memo. 1993-497.

a. The taxpayer's degree of control over the corporation

Petitioner had exclusive, unfettered control over Goshorn. Mr. Sweet testified that petitioner was involved in all phases of the business, from participation in respondent's audit to management decisions. Such unrestrained control weighs in favor of constructive dividends. Epps v. Commissioner, T.C. Memo. 1995-297.

b. The existence of restrictions on the amount of disbursements

Between November 1, 1987, and September 30, 1991, Goshorn's books recorded that petitioner's "loan" account increased from zero to $379,898.05. Petitioner never testified that a ceiling existed on the amount that he could borrow from Goshorn. This factor weighs in favor of constructive dividends. Crowley v. Commissioner, supra at 1081.

c. The corporate earnings and dividends history

Generally, a distribution by a corporation to its share-holders, to the extent of earnings and profits, is a dividend, unless the distribution is within one of the exceptions of the

Code.  Secs. 301(c)(1), 316(a); <u>Dolese v. United States</u>, <u>supra</u> at 1152.  During the tax years at issue, Goshorn reported earnings between $867,000 and $990,000.  The disbursements to petitioner were never greater than Goshorn's retained earnings.

Goshorn never declared a dividend for any of the years that petitioner owned and operated it.  These factors militate against a finding of a bona fide loan.  <u>Crowley v. Commissioner</u>, <u>supra</u> at 1085.

d.  <u>The use of customary loan documentation</u>

Petitioner did not execute any notes to Goshorn reflecting his obligation to repay these amounts.  Additionally, Goshorn was never provided a security interest against any of petitioner's property.  Customary loan documentation is not a prerequisite to a bona fide loan, but "its absence unquestionably is relevant to the parties' intent."  <u>Id.</u> at 1082.  The absence of loan documentation leaves the taxpayer "with one less string to strum for the factfinder."  <u>Id.</u>

e.  <u>The ability of the shareholder to repay</u>

"Whether the shareholder, at the time of the disbursement, has a realistic ability to repay it is a factor which sheds light on his intentions."  <u>Baird v. Commissioner</u>, T.C. Memo. 1982-220.

Petitioner testified that the sums in question were intended to be fully repaid through the sale of either lot 1 or lot 2 of the Eudora property.  Petitioner testified that, in 1991 or 1992, he received an offer to purchase lot 2 of the Eudora property for

$360,000, but that a sale never came to fruition.  As of November 1, 1995, the date of trial, the Eudora property was encumbered by three deeds of trust securing obligations totaling approximately $650,000 to the Aurora National Bank.  Petitioner believes his equity in the Eudora property to be approximately $1 million.  In addition to the Eudora property, petitioner also owns his personal residence and the property adjacent to his residence.  Petitioner testified that the property adjacent to his personal residence has a value of at least $200,000.

Respondent argues petitioner is unable to repay the moneys advanced to him by Goshorn.  The secured loans encumbering the Eudora property amount to $650,000.  Petitioner also owes approximately $400,000 for unpaid unemployment taxes for his corporations; Goshorn, Racon, and Tek-Pak.  Additionally, petitioner is personally liable for $50,000 of unpaid debts of Goshorn.  In total, petitioner owes various creditors $1.1 million dollars.  Other than his testimony, the record is devoid of anything to support petitioner's valuation of the Eudora property, his residence, or the property adjacent to his residence.  Petitioner bears the burden of proof.  Rule 142(a). There is nothing in the record to support petitioner's contention that he had the ability to repay the amounts in question.  Therefore, we agree with respondent that petitioner has failed to prove that he owns assets that equal the amount of his debt.

f.  The treatment of the disbursements on the corporate records

Goshorn recorded the disbursements to petitioner as loans on its corporate books.  Petitioner and Mr. Sweet discussed the disbursements for the purpose of preparing Goshorn's financial statements and tax returns.  Additionally, the disbursements were disclosed to Goshorn's bank during the process of negotiating loans from the bank.  These circumstances weigh in favor of treating the disbursements as loans.

g.  The creation of legal obligations

Taking into account the absence of any loan documentation, petitioner failed to prove that any definite maturity date existed for the loans.  During the years in issue, the only funds that Goshorn credited against petitioner's shareholder loan account consisted of the rent that Goshorn owed petitioner for the use of the Eudora property.  Goshorn's rent was $5,000 per month.  For the 1987 and 1990 tax year, Goshorn credited $60,000 each year to petitioner's loan account for rent; i.e., 12 months at $5,000 per month.  However, in 1988 and 1989, Goshorn only paid $50,000 and $25,000 in rent respectively.  Thus, for 1988 and 1989, petitioner only reduced his shareholder loan amount by $50,000 and $25,000.  Therefore, for 1988 and 1989, there was no regular repayment schedule.

Petitioner has failed to prove a fixed maturity date and has not made fairly regular repayments.  Thus, he has failed to prove

that legal obligations were created, and this factor weighs in favor of treating the disbursements as dividends, not loans.

h. The corporation's attempts to enforce repayment

Petitioner produced no evidence of any steps taken by Goshorn to compel repayment of the amounts that it carried as an account receivable from shareholder. This factor weighs in favor of treating the distributions as constructive dividends.

i. The shareholder's intention or attempts to repay

Repayment is strong evidence that a disbursement was intended as a loan. Crowley v. Commissioner, 961 F.2d at 1083. Where corporate distributions are repaid in full or in part from time to time, a true loan is indicated. Baird v. Commissioner, supra. Here, petitioner has made numerous repayments over the years.

First, petitioner's largest credits against his "loan account" came from the rent that Goshorn owed petitioner for the use of the Eudora property. These credits totaled $195,000 during the years in issue.

Second, petitioner has also been repaying a number of Goshorn's liabilities. Petitioner has been personally paying Goshorn's liabilities to Reddi-Mix Concrete, a debt of about $40,000 and to a pipeline company for material, a debt of about $10,000. These payments amount to approximately $50,000.

Finally, in April 1993, petitioner and his wife personally borrowed $181,320.36 from the Aurora National Bank and used the

loan proceeds to repay a preexisting note Goshorn owed the bank.
Goshorn reduced petitioner's shareholder loan account by the
amount of proceeds. This loan was secured by a lien on peti-
tioner's principal residence. These repayments weigh in favor of
treating the disbursements as loans.

Summary

In summary, despite petitioner's testimony that he intended
the advances to be loans, the objective factors heavily weigh in
favor of constructive dividends. Therefore, we sustain respon-
dent's determination that, for tax years 1987, 1988, 1989, and
1990, the amounts of $21,040, $216,621, $52,775, and $102,196,
respectively, constitute dividends to petitioner rather than
loans.

Addition to Tax for Late Filing

Section 6651(a)(1) imposes an addition to tax for a tax-
payer's failure to timely file a return, unless the taxpayer
shows that the failure is due to reasonable cause. The amount
added to the tax is 5 percent of the tax required to be shown on
the return if the failure is for not more than one month, with an
additional 5 percent for each additional month or fraction there-
of during which the failure continues, but not to exceed 25 per-
cent in the aggregate. Sec. 6651(a)(1); sec. 301.6651-1(a)(1),
Proced. & Admin. Regs. For purposes of calculating the addition
to tax, the date prescribed for filing is determined by taking

into account any extension of time for filing granted by respondent.  Sec. 301.6651-1(a)(1), Proced. & Admin. Regs.

Petitioner bears the burden of proving that reasonable cause existed for such failure.  Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985); Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974); Cepeda v. Commissioner, T.C. Memo. 1993-477, affd. without published opinion, 56 F.3d 1384 (5th Cir. 1995).  Petitioner failed to timely file his 1987 Federal income tax return.  His 1987 Federal income tax return, due on October 15, 1988, owing to extensions, was not filed until August 16, 1990.

Petitioner asserts that the lateness of the return resulted from a change from one accounting firm to another.  Mr. Sweet testified that he was not involved in preparing petitioner's return for 1987.  The record sheds virtually no light on why the return was filed late.

Petitioner has failed to show that he exercised ordinary business care and prudence in filing his 1987 Federal income tax return.  See United States v. Boyle, supra at 247.

Petitioner obtained a filing extension through October 16, 1989, for his 1988 Federal income tax return.  Petitioner and Mrs. Weigel filed their 1988 Federal income tax return on October 11, 1990.  Petitioner obtained no extensions for his 1990 Federal income tax return, which was due April 15, 1991.

Petitioner's 1990 Federal income tax return was filed on October 6, 1992.

Petitioner claims that the 1988 and 1990 Federal income tax returns were filed late because of difficulties in obtaining information from an employee of Tek-Pak. At trial, petitioner asserted that the person whom he hired to run Tek-Pak, an S corporation of which petitioner was sole shareholder, did not provide petitioner with all the documents that he needed in order to file his returns. Petitioner failed to explain, however, what steps, if any, he took to obtain the records from Tek-Pak. In any event, he has not established that any difficulty he encountered in that regard amounts to reasonable cause for the delinquent filing of the returns. See sec. 301.6651-1(c), Proced. & Admin. Regs.

Petitioner has failed to show why the additions to tax for late filing should not apply to him for 1987, 1988, and 1990. We hold that petitioner is liable for the additions to tax for failing to timely file his 1987, 1988, and 1990 Federal income tax returns.

To reflect the foregoing,

Decision will be entered under Rule 155.